*Decision will be entered under Rule 50.*

GEORGE KEMP REAL ESTATE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19646. Promulgated November 8, 1951.

*Alexander S. Andrews, Esq.*, for the petitioner.
*T. R. Wickersham, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* This proceeding arises upon a petition for a redetermination of the respondent's disallowance of applications for relief under section 722(a) and (b)(5) of the Internal Revenue Code with respect to excess profits taxes for the years 1941, 1942, 1943, and 1944.

After the petition and the respondent's answer and amendment thereto were filed, we granted the respondent's motion to sever the issues. As the result of such severance, the only issue to be decided at this time is whether as a matter of law the decision of this Court in the case of *George Kemp Real Estate Co.*, 12 T. C. 943, Docket No. 10126, is res judicata as to the petitioner's right to section 722 relief in this proceeding.

The prior proceeding instituted by this petitioner raised the issue as to its right to relief for the year 1940 under section 722 (a) and (b)(5) of the Internal Revenue Code. In our opinion in that case, promulgated on June 2, 1949, and reported at 12 T. C. 943, we held that the petitioner was not entitled to the claimed relief. In our decision, entered on June 2, 1949, it was ordered and decided "That the petitioner is not entitled to any relief under the provisions of Section 722, Internal Revenue Code, for the year 1940." The petitioner filed a petition for review of our decision by the United States Circuit Court of Appeals for the Second Circuit, which petition was dismissed for lack of jurisdiction in an opinion reported at 182 F. 2d 847. The petitioner then filed with the Supreme Court of the United States a petition for a writ of certiorari, which petition was denied, 340 U. S. 852.

We granted a hearing on the issue of res judicata. At that hearing, counsel for the petitioner stated that in the proceeding as to the year 1940 every fact on which the petitioner relied had been found by this Court, and that no exception was taken to the facts that were found. The facts found in the 1940 proceeding are incorporated herein by reference. Only a summary will be given here.

Since about 1903, the petitioner's chief source of income has been from rentals of property on the east side of Fifth Avenue between 49th and 50th Streets in New York City. The petitioner owned all of the property on that side of the block except one parcel known as No. 617 Fifth Avenue, with a frontage of 42 feet and a depth of 100

feet. Thus, the property owned by the petitioner on Fifth Avenue was U-shaped.

All of the above property was leased in 1920 to Saks & Co., all of the stock of which was owned by Gimbel Brothers, Inc. The lease provided that the lessee was to remove the then existing improvements on the premises and erect a unified building covering all of the property, including parcel No. 617, which was then owned by Saks & Co. or an affiliate. The new building was completed about 1922 and has since been operated by Saks & Co.

The lease provided for a fixed net rental of $200,000 per year from October 1, 1922, to May 1, 1924, and thereafter for a net annual rental of $300,000 payable quarterly. The term of the lease was for 21 years, with several renewal periods of 21 years, each at the election of the lessee.

The Gimbel group, including Saks & Co., suffered severe financial reverses during the general business depression following 1931. Heavy fixed charges, particularly rent and mortgage interest, had to be scaled down. This was done beginning in 1932. By 1935, the Gimbel group was kept in business only by reason of concessions made by lessors and mortgagees. Concessions were made by the petitioner in the rental for its U-shaped property in each of the years 1932 to 1935, inclusive.

In 1935, the Gimbel group represented to the petitioner that it was in danger of collapsing if the petitioner did not agree to a more permanent plan for concession in rent, and to its plan for raising liquid funds by the sale to the petitioner of parcel No. 617 Fifth Avenue. Reductions in rent during the depression were not unusual, and were quite frequent in respect of comparable properties. Every other lessor of the Gimbel group reduced its rent.

In December 1935 the petitioner entered into an agreement with the Gimbel group, including Saks & Co., whereby the petitioner agreed to reduce the rent on the U-shaped property by $50,000 per year for the period between December 1, 1935 and June 30, 1940. The petitioner purchased parcel No. 617 for the sum of $1,000,000, and leased that parcel to Saks & Co. at a rental of $55,000 per year.

The facts found with respect to the year 1940, and summarized above, are substantially the facts alleged in the petition filed with respect to that year. The facts alleged in the petition filed for the years 1941 to 1944, inclusive, are basically the same, but in somewhat less detail than in the petition for the year 1940.

In the petition with respect to the year 1940, the petitioner alleged as error on the part of the respondent the following:

(a) failing to allow said claim in full;

(b) asserting that petitioner had "not established its right to the relief requested in said application".

(c) asserting that petitioner "had not established that the tax computed under subchapter (e) of Chapter 2 of the Internal Revenue Code, without the benefit of § 722 of the Code, results in an excessive and discriminatory tax within the provisions of § 722 (a) or (b) of the Code;

(d) asserting that petitioner had "not established what would be a fair and just amount representing normal earnings to be used as a constructive average base period net income for the purposes of an excess profits tax based upon a comparison of normal earnings and earnings during the excess profits tax year ending December 31, 1940".

(e) holding that said claim should be disallowed, and that there was no overpayment of excess profits tax for said year:

(f) failing to specify other than in the aforesaid generalities any particular in which petitioner's said claim and the supplemental information furnished by petitioner as below alleged was deemed to fail in satisfying the requirements of said § 722 (a) and (b) 5.

(g) in failing to determine and hold that petitioner had established what was the fair and just amount of petitioner's normal earnings as a constructive base period net income for the purpose of excess profits tax during 1940, to wit the sum of $220,596.08;

(h) in failing to determine and hold that petitioner's said excess profits tax computed without the benefit of said § 722 did and does result in an excessive and discriminatory tax within the true meaning and intent of sub. (a) and (b) 5 of said § 722.

In the petition filed in the present proceeding, error on the part of the respondent was alleged as follows:

(a) failing to allow each of said claims in full;

(b) asserting that petitioner had not established its right to the relief requested in such applications;

(c) in disallowing said claims and each thereof;

(d) in asserting that there was no overpayment by petitioner of excess profits tax.

At the hearing in the 1940 proceeding, there was evidence that in addition to the rentals from Saks & Co., the petitioner was receiving a small rental from a piece of property at 720 Fifth Avenue, and that that was the only other property that it owned.

At the hearing on the res judicata issue in this proceeding, the petitioner offered evidence to the effect that the only property it owns, other than that leased to Saks & Co., is property at the northwest corner of Fifth Avenue and 56th Street. That property is leased to Duveen at a net annual rental of $40,000 under a lease made in 1910, and the renewals of which will not expire until 1992. The lease contains no provision for the petitioner to share in the lessee's gross or net profits.

The position of the respondent is that the petitioner is barred by the doctrine of res judicata and/or collateral estoppel from a hearing on the merits of its claims for relief for the years 1941 to 1944, inclusive, under section 722 (a) and (b) (5) of the Internal Revenue Code, by reason of this Court's having determined the question of its right to such relief for the year 1940, and there having been no change in the underlying facts or controlling legal principles.

The petitioner argues that there is no collateral estoppel because

there was no issue directly pleaded, raised, litigated, found, or decided, on the matter which this Court found essential to its decision, namely, the postulate that the petitioner was a member of an industry engaged in production within the meaning of Code section 722 (b) (3).

For the year 1940, the petitioner claimed that it was entitled to relief under the provisions of section 722 (b) (5). The basis for its argument against the application of res judicata is the reference in the opinion in the 1940 case to section 722 (b) (3). On this point, the material parts of the opinion are as follows:

It (section 722 (b) (5)) provides as follows:

SEC. 722. GENERAL RELIEF—CONSTRUCTIVE AVERAGE BASE PERIOD NET INCOME.

\* \* \* \* \* \* \*

(b) TAXPAYERS USING AVERAGE EARNINGS METHOD.—The tax computed under this subchapter (without the benefit of this section) shall be considered to be excessive and discriminatory in the case of a taxpayer entitled to use the excess profits credit based on income pursuant to section 713, if its average base period net income is an inadequate standard of normal earnings because—

\* \* \* \* \* \* \*

(5) of any other factor affecting the taxpayer's business which may reasonably be considered as resulting in an inadequate standard of normal earnings during the base period *and the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein.* [Italics supplied.]

\* \* \* \* \* \* \*

We think that to give the relief which petitioner requests would be inconsistent with subsection (b) (3), which provides as follows:

(3) the business of the taxpayer was depressed in the base period by reason of conditions generally prevailing in an industry of which the taxpayer was a member, subjecting such taxpayer to

(A) a profits cycle differing materially in length and amplitude from the general business cycle, or

(B) sporadic and intermittent periods of high production and profits, and such periods are inadequately represented in the base period.

See also subsection (b) (2).

In S. Rep. 1631, *supra*, p. 36, it is stated that to be entitled to any relief under section 722 the taxpayer must show "(3) Depression due to a profits cycle differing from the general business cycle." The petitioner has not shown in this proceeding that its business cycle differed materially in length and amplitude from the general business cycle; in fact, the effect of the depression which petitioner claims qualifies it for section 722 relief was permanent and characteristic of business in general during the period involved. Hence, since we believe that to grant the relief which petitioner here seeks would be inconsistent with the principles of section 722 (b), we must conclude that it is not entitled to any relief under section 722.

That the principle of res judicata is applicable to tax cases is now well settled, and the single fact that the proceedings are for different tax years will not prevent its application. The case of *New Orleans* v. *Citizens' Bank*, 167 U. S. 371, involved the question of whether a judg-

ment of a court of competent jurisdiction upholding a charter exemption from tax estopped the city from attempting to collect taxes for subsequent years contrary to the same exemption. In holding that res judicata barred the second proceeding the Court said:

> The proposition that because a suit for a tax of one year is a different demand from the suit for a tax for another, therefore *res judicata* cannot apply, whilst admitting in form the principle of the things adjudged, in reality substantially denies and destroys it. The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when the question upon which the recovery of the second demand depends has under identical circumstances and conditions been previously concluded by a judgment between the parties or their privies. This is the elemental rule, stated in the text books and enforced by many decisions of this court.

The case of *Tait* v. *Western Maryland Ry. Co.*, 289 U. S. 620, involved suits for refund of Federal income taxes based on issues that had been litigated by the taxpayer before the Board of Tax Appeals and the Court of Appeals for earlier years. In that case, the collector, Tait, urged that res judicata was not applicable because the two proceedings involved taxes for different years. In answer to this the Court said:

> The scope of the estoppel of a judgment depends upon whether the question arises in a subsequent action between the same parties upon the same claim or demand or upon a different claim or demand. In the former case a judgment upon the merits is an absolute bar to the subsequent action. In the latter the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action. * * * Since the claim in the first suit concerned taxes for 1918 and 1919 and the demands in the present actions embraced taxes for 1920–1925, the case at bar falls within the second class. * * *
>
> As petitioner says, the scheme of the revenue acts is an imposition of tax for annual periods, and the exaction for one year is distinct from that for any other. But it does not follow that Congress in adopting this system meant to deprive the government and the taxpayer of relief from redundant litigation of the identical question of the statute's application to the taxpayer's status.

The Court then referred to the fact that the doctrine of res judicata had been held applicable in suits relating to state taxes for different years and cited, among others, the case of *New Orleans* v. *Citizens' Bank, supra*. On this point, the Court concluded that:

> It cannot be supposed that Congress was oblivious of the scope of the doctrine, and in the absence of a clear declaration of such purpose, we will not infer from the annual nature of the exaction an intent to abolish the rule in this class of cases.

In the *Tait* v. *Western Maryland Ry. Co.* case, *supra*, the collector suggested that facts were stipulated in the second case which were not made to appear in the first. These concerned the question of the identity of the taxpayers as the result of a foreclosure and reorgani-

zation. But the Court pointed out that the Court of Appeals found that all of the facts in the second case were before it in the first. Accepting this finding, the Supreme Court said:

The petitioner may not escape the effect of the earlier judgment as an estoppel by showing an inadvertent or erroneous concession as to the materiality, bearing or significance of the facts, provided, as is the case here, the facts and the questions presented on those facts were before the court when it rendered its judgment. Compare *Deposit Bank* v. *Frankfort*, 191 U. S. 499, 510, 511, 24 S. Ct. 154, 48 L. Ed. 276. The very right now contested arising out of the same facts appearing in this record, was adjudged in the prior proceeding.

In *Commissioner* v. *Sunnen*, 333 U. S. 591, the Supreme Court was again called upon to decide whether a judgment as to income tax liability for one year effects an estoppel to proceedings between the same parties for other years. The Court recognized that in matters of Federal taxation "Each year is the origin of a new liability and of a separate cause of action," and that a "subsequent modification of the significant facts or a change or development in the controlling legal principles" may make the determination in the earlier proceeding "obsolete or erroneous, at least for future purposes." On this point the Court further said:

And so where two cases involve income taxes in different taxable years, collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged.

Upon consideration of the record in each of the proceedings instituted by this petitioner, we are of the opinion that the holding on the merits in Docket No. 10126 estops the petitioner from a trial on the merits in the proceeding for later years, Docket No. 19646.

We have here the same parties in both proceedings. Although the causes of action are different in that different taxable years are involved, nevertheless "the matter raised in the second suit is identical in all respects with that decided in the first proceeding and * * * the controlling facts and applicable legal rules remain unchanged." *Commissioner* v. *Sunnen, supra.* In the present proceeding, the matter raised is whether the respondent erred in failing to allow excess profits tax relief under the provisions of section 722 (a) and (b) (5) of the Internal Revenue Code. This is the identical matter that was decided in the prior proceeding. There has not been any change in the controlling facts. The facts in the prior proceeding and those alleged in the present one are essentially the same. They deal with the petitioner's activities in the rental of real estate to Saks & Co. Accepting as facts the allegations of fact in the second petition, we do not find therein any difference sufficient to warrant a holding that the controlling facts in the two tax periods are changed. At the

hearing on the issue of res judicata, counsel for the petitioner stated that "Every single fact on which we rely was found by the Court."

Nor has there been any change in the legal rules between the time of the decision in the proceeding for the year 1940 and the present time. The governing statutory provisions have remained the same, and we have found no intervening decisions that lay down any different rules.

But the petitioner insists that the matter of whether it was a member of an industry engaged in production was not raised, litigated, found, or decided in the prior case, and that under such circumstances collateral estoppel does not apply. It cites many cases which it says support its position. One of them is *Dowd* v. *Cook*, 340 U. S. 206. That was a habeas corpus proceeding based upon a prison warden's suppression of appeal papers. The Court rejected the warden's plea of res judicata based on prior litigation in a State court. The Court first referred to a case holding that res judicata is not applicable to a decision on habeas corpus refusing to discharge a prisoner, and then pointed out that in the prior litigation the State "court made only one finding, and that pertained to a matter not now in dispute." We do not see the applicability of that case. Res judicata is admittedly applicable in tax cases, and here the matter in dispute is the same in both cases. Another case cited by the petitioner is *United States* v. *Munsingwear, Inc.*, 340 U. S. 36. There the United States had filed one suit for alleged violation of price fixing regulations and sought, in separate counts, an injunction and treble damages. On trial of the first count, the trial court held against the United States. It then dismissed the second count on the ground that the judgment in the injunction suit was res judicata of the other count. The dismissal was sustained by the Supreme Court which said that the case came within the principles laid down in *Union Pacific R. Co.* v. *United States*, 168 U. S. 1, which held in part that res judicata applies "even if the second suit is for a different cause of action, the right, question of fact once so determined [in a prior suit] must, as between the same parties or their privies, be taken as conclusively established * * *." It is difficult to see wherein this case supports the petitioner's argument.

For other reasons the petitioner's argument on this point is not well founded. In the proceeding concerning the year 1940, it was neither found as a fact nor held in the opinion that the petitioner was "a member of an industry engaged in production," as stated in the petitioner's brief. In the opinion in the prior case, we analyzed section 722 (b) (5) under which the petitioner claimed relief, and noted the provision therein that relief thereunder was to be granted only if "the application of this section to the taxpayer would not be inconsistent with the principles underlying the provisions of this subsection, and with the conditions and limitations enumerated therein." Subsection

(b) (3) is one of the provisions of "this subsection." It was concluded that the petitioner had not shown "that its business cycle differed materially in length and amplitude from the general business cycle." Thus, the provisions of subsection (b) (3) were merely used to determine the application of the consistency test laid down in subsection (b) (5). This is short of any finding that the taxpayer was a member of an industry engaged in production. Parenthetically, the opinion in the prior case says nothing about the petitioner being "engaged in production" as alleged in the petitioner's brief. Subsection (b) (3) is divided into parts A and B. Part A deals with variant profits cycles, and part B deals with periods of high production and profits, and these provisions are expressed in the alternative. Therefore, it is not necessary that a taxpayer be engaged "in production" in order to test the applicability of the variant profits cycle provision.

Upon a reading of the entire opinion in the prior proceeding, it is clear that the reference therein to subsection (b) (3) is merely one of the reasons underlying the decision that the petitioner was not entitled to section 722 relief. The reasons given for a judgment do not constitute a ground for denial of the application of res judicata. The case of *New Orleans* v. *Citizens' Bank*, *supra*, involved a suit concerning local taxes as to which there had been an adjudication for a prior year. In holding that the adjudication for the earlier year barred the suit for the later year, the Supreme Court quoted a Louisiana case in which the opinion reads in part:

Whether the reasons upon which it [the first judgment] was based were sound or not, and even if no reasons at all were given, the judgment imports absolute verity, and the parties are forever estopped from disputing its correctness.

The petitioner argues that a decision erroneous in law in a prior suit between the same parties on the same subject will not be recognized as effecting collateral estoppel, and cites in support thereof the case of *St. John* v. *Wisconsin Board*, 340 U. S. 411. We need not go into an analysis of that case, which involved numerous questions (including injunctive and declaratory relief and conflict of laws) as we are not prepared to say that the decision in the prior case was erroneous in law.

Upon examination of the pleadings in both proceedings, the findings of fact, opinion, and decision in the prior proceeding, and the evidence in the prior proceeding and under the severed issue in this proceeding, and consideration of the arguments of the parties, it is our conclusion that the issue of res judicata must be decided in favor of the respondent. The parties in both proceedings are the same. The matter raised in both proceedings is the same, namely, whether the petitioner is entitled to relief under the provisions of Internal Revenue Code section 722, subsections (a) and (b) (5), and there has been no change in the controlling facts and applicable legal rules

since the decision in the prior proceeding was rendered. Under these circumstances, we conclude that the petitioner is not entitled again to litigate before this Court its claim to relief.

Reviewed by the Court.

*Decision will be entered for the respondent.*