Internal Revenue Service, are required to follow the law, and that is what we have done here.

I concur in the opinion of the court.

COLLINS, Judge, joins in the foregoing concurring opinion.

**Edward R. FINK and Joan O. Fink**

v.

**The UNITED STATES.**

**No. 424–70.**

United States Court of Claims.

Feb. 18, 1972.

Edward R. Fink, and Joan O. Fink, pro se.

William Kalish, Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE and DURFEE, Senior Judges, and DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

SKELTON, Judge.

This is a suit for refund of income taxes allegedly overpaid for the taxable year ended December 31, 1965. The facts of the case are undisputed. Plaintiffs, Edward R. Fink and Joan O. Fink, husband and wife, were at all times pertinent to this claim, citizens of the United States and domiciled in the State of Washington, a community property state. Pursuant to Edward's Navy orders, plaintiffs left their home in Seattle and took up residence in Sasebo, Japan, the home port of the flagship of the staff to which Edward was attached. Plaintiffs retained their residence in Sasebo from April 16, 1965, to July 1967, while he served with the Seventh Fleet. During this period, Edward received his salary from the United States for services he rendered to the United States Navy. Joan was strictly a housewife and performed no services for the United States.

Plaintiffs filed a timely joint income tax return for the taxable year 1965 and paid income taxes in the amount of $1,248.36. Joan thereafter filed for exemption from taxation of her one-half of the community income earned during the part of the taxable year 1965 in which she and her husband were overseas and by amended return, plaintiffs requested refund of $500.25. Plaintiffs claim exclusion of this income under Section 911(a) (2) of the Internal Revenue Code of 1954, 26 U.S.C. § 911 (1970), which reads in pertinent part as follows:

§ 911. Earned income from sources without the United States.

(a) General rule.

The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

\*     \*     \*     \*     \*     \*

(2) Presence in foreign country for 17 months.

In the case of an individual citizen of the United States who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (ex-

cept amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such 18-month period. * * *

* * * * * *

While plaintiffs admit that Edward's share of the income was not exempt since its source was the United States, they contend that the source of Joan's share was not the United States, but rather, the community property laws of Washington [1] which gave her a vested right to one-half of the community income. The Commissioner of Internal Revenue disallowed the exclusion on the grounds that the source of her income was the United States, and plaintiffs filed this suit for refund.

■ The sole issue to be determined in this case is whether or not plaintiffs, citizens of the United States and domiciled in the community property State of Washington, are entitled to exemption under Section 911(a) (2) of the Internal Revenue Code of 1954 for Joan's half of the salary earned by Edward, as a member of the United States Navy, between April 16, 1965, and December 31, 1965, the part of the 1965 taxable year during which the plaintiffs were overseas, on the theory that the source of her half of such salary was not the United States, but rather, the community property laws of the State of Washington. We find that Joan's half of her husband's salary was paid by the United States and is therefore not exempt from taxation under Section 911(a) (2).

In Poe v. Seaborn, 282 U.S. 101, 51 S. Ct. 58, 75 L.Ed. 239 (1930), the Supreme Court ruled that the law of Washington gives the wife a vested right to one-half of the community income, which she may treat as her respective income for Federal income tax purposes.

Plaintiffs argue that since Joan performed no services for the United States and had no contractual relationship with the United States, the source of her income could not have been the United States. They claim that she received her income from the community estate, which, by operation of the community property laws of Washington, compensated her for her labors as a housewife and mother.

■ Plaintiffs' ingenious argument misinterprets the clear language of Section 911 of the Code and, moreover, it reflects a basic misunderstanding of the theory underlying community property law. Section 911(a) exempts "amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such 18-month period." Section 911(b), 26 U.S.C. § 911 (1970), which defines "earned income," reads as follows:

§ 911. Earned income from sources without the United States.

* * * * * *

(b) Definition of earned income.

For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material in-

---

1. Revised Code of Washington, 26.16.030 reads as follows:

"26.16.030 Community property defined —Control of personalty. Property not acquired or owned[,] as prescribed in RCW 26.16.010 and 26.16.020[,] acquired after marriage by either husband or wife or both, is community property. The husband shall have the management and control of community personal property, with a like power of disposition as he has of his separate personal property, except he shall not devise by will more than one-half thereof."

come-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

\*   \*   \*   \*   \*   \*

The statute does not require that the personal services be actually rendered by the taxpayer, as plaintiffs implicitly assume by arguing that Joan performed no services for the United States. In Graham v. Commissioner of Internal Revenue, 95 F.2d 174 (9th Cir. 1938), the court held that a wife was entitled to the "earned income credit" allowed under Section 31 of the Revenue Act of 1928, ch. 852, 45 Stat. 791, on her share of the community income derived exclusively from her husband's fees as an architect practicing and domiciled in the State of Washington. The court, interpreting the definition of "earned income" contained in that statute, which is identical to that contained in Section 911(b), stated:

> Respondent [the Commissioner] says that the phrase "personal services actually rendered," in the first part of section 31(a) (1), means personal services actually rendered by the taxpayer. Thus we are asked to read into the quoted phrase a limitation which it does not contain. This we decline to do. We think that, if Congress had intended such a limitation, it would have expressed that intent. It did, in the same paragraph, where limitations were intended, express such intent by using the words "by him" and "by the taxpayer." No such words were used in the first part of section 31(a) (1). We conclude, therefore, that no limitation was there intended. [*Id.* at 175.]

Therefore, following the reasoning of the above-quoted language in *Graham,* we hold that Joan's half of her husband's Naval salary is not exempt from taxation under Section 911 since it was earned income paid by the United States.

■ However, even if Section 911 were construed to require that the services be actually rendered by the person taxable on the compensation, a construction which we hold to be improper, plaintiffs' argument still could not prevail, since it runs counter to the theory of community property law. Plaintiffs assume that Edward rendered services to the Navy individually and on his own account, that his salary was initially his own property, and that the community property laws of Washington required him to pay over half of his salary to his wife to compensate her for her services as a wife. However, in the *Poe* case, *supra,* 282 U.S. at 117, 51 S.Ct. at 61, the Supreme Court, referring to the husband's salary in the State of Washington, stated that "by law, the earnings are never the property of the husband, but that of the community." Furthermore, in *Graham, supra,* the court, in offering an alternative ground for holding that the wife's share of the community income was "earned income," said:

> Even though "earned income" were defined as income received as compensation for personal services actually rendered by the taxpayer, still petitioner's half of the above-mentioned community income would be within the definition. The Board found that said community income was received as compensation for professional services rendered by petitioner's husband. Respondent assumes, erroneously, that these services were rendered by petitioner's husband individually, on his own account and for himself alone, thus assuming as a fact that which, in Washington, is a legal impossibility. When a married man residing in Washington practices a profession or engages in any gainful occupation or activity, he does so as the agent of a marital community consisting of himself and his wife. Poe v. Seaborn, *supra.* He cannot do so in any other way or in any other capacity. Serv-

ices rendered by him are actually rendered by the community, that is to say, by him and his wife, equally. So, in this case, petitioner was, no less than her husband, the actual renderer of the services for which they received as compensation the community income above referred to.

That petitioner did not personally participate in the professional labors of her husband is immaterial. One may actually render a personal service without personally performing the acts constituting the service. Otherwise a partnership acting through one of its members, or a principal acting throught [sic] an agent, could not actually render a personal service, the truth being, of course, that such services can be and, in countless instances, are actually so rendered. [95 F.2d at 176.]

The court's rationale in *Graham*, set forth above, is useful here in two respects. First, it offers a clear explanation of the theory of community property. Second, it provides an alternative ground for our own decision in the instant case in the event Section 911 were interpreted to require that the services be personally rendered by the person taxable on the resulting income. Since Edward acted only as an agent of the community in rendering service to the United States Navy, and since the salary earned was paid by the United States to the community of which Joan was a member, her share of the salary does not qualify for exemption under Section 911 since it was paid by the United States and is deemed to have been earned by her.

■ In Rev.Rul. 55–246, 1955–1 Cum.Bull. 92, the Internal Revenue Service, considering the application of Section 911(a) to the wife's share of community income earned by the husband without the United States, ruled as follows:

The division of income on the community property basis does not alter the exempt character of income enti-tled to exemption under section 911(a) of the Code. See Revenue Ruling 54–16, C.B. 1954–1, 157. If the bona fide residence requirements of section 911(a) (1) or the physical presence requirements of section 911(a) (2) of the Internal Revenue Code of 1954 are met by the spouse who earns the income and the income qualifies as earned income within the meaning of section 911(b) of the Code, such income subject to any limitations of the applicable section of the Code is exempt from taxation on the individual income tax returns of the husband and wife filing separate returns in a community property State regardless of whether the other spouse meets the requirements specified in section 911(a) of the Code. Whether the community property system is in effect in the foreign country where the income is earned is immaterial.

Accordingly, in each of the situations presented, the wife may exclude from gross income on her separate return her share of the income earned by her husband without the United States which is excludable from gross income under the applicable provisions of section 911(a) of the Code. However, with respect to that portion of the earned income of the husband which is not exempt under the provisions of 911(a) of the Code, the wife must include in gross income on her separate return her share of such earned income.

The whole thrust of Rev.Rul. 55–246 is that state community property laws do not alter the exempt or non-exempt character of income under Section 911(a). If the income is exempt in the hands of the husband who earns it, the wife's share is likewise exempt. Conversely, if the income earned by the husband is not exempt under the provisions of 911(a), the wife's share is also taxable. The Service's position is in accord with community property concepts and achieves an equitable result, in that it places taxpayers from community prop-

erty states in the same position as tax-payers from common law states.

Congress enacted the Revenue Act of 1948, c. 168, 62 Stat. 110, permitting husbands and wives to split income by filing joint returns, in order to elimi-nate unequal treatment between married taxpayers in community property states and non-community property states. The Senate Committee Report, S.Rep. No. 1013, 80th Cong., 2d Sess. 1 (1948), stated:

> Equalization is provided for the tax burdens of married couples in com-mon-law and community-property States. The bill corrects existing in-equalities under the estate and gift taxes, as well as the individual income tax.[2]

The Senate Report, S.Rep.No.1013, *supra*, at 24–25, states further:

> Income splitting will produce the same result in common-law States which now obtains in a community-property State when the entire income of both spouses is community income. If, however, spouses in community-property States have separate income, they may split their income by elect-ing to file a joint return. Under ex-isting law, separate income in commu-nity-property States is taxed in full to the spouse who receives it. Thus, the type of solution embodied in H.R. 4790, as amended, benefits residents of both common-law and community-property States.
>
>     \*     \*     \*     \*     \*     \*
>
> Adoption of these income-splitting provisions will produce substantial geographical equalization in the im-pact of the tax on individual incomes. \* \* \* In effect, these amendments represent the adoption of a new na-tional system for ascertaining Federal income tax liability. \* \* \*[3]

In Renoir v. Commissioner of Internal Revenue, 321 F.2d 605 (9th Cir. 1963), the court held that a husband and wife domiciled in California, a community property state, who were present in France for a sufficient period to qualify for exemption under Section 911(a) (2), and who received income from services performed on behalf of the community by the husband, were entitled to only one exclusion from gross income for the taxable year 1956, computed on a daily basis at an annual rate of $20,000.[4] In affirming the Tax Court, the court said:

> \* \* \* [W]e agree with the Tax Court that in the absence of a "clear-cut statutory mandate" an intention should not be attributed to Congress to grant preferential treatment to tax-payers who live in community proper-ty states. \* \* \* [Footnote omit-ted.] [*Id.* at 607.]

In Daniel M. Ebberts, 51 T.C. 49 (1968), the Tax Court held that Section 267(a) (2) of the Internal Revenue Code of 1954, which denies deductions for ac-crued but unpaid salaries between relat-ed taxpayers, operated to deny a father a deduction for one-half of an accrued bonus earned by his son as an employee of the father's business, such one-half interest representing the interest of the son's wife in community income under California law. In reaching this deci-sion the court commented:

> We are mindful that the wife's com-munity property interest in her hus-band's earnings has resulted in a vari-ety of decisions affecting their tax liabilities. But in general, a common thread runs through these decisions, namely, an effort by the courts to in-terpret the various statutory provi-sions in such manner as to produce uniformity of treatment of spouses throughout the country, whether they

---

2. The House Report, H.R.Rep.No.1274, 80th Cong., 2d Sess. (1948), is substan-tively identical.

3. The House Report, H.R.Rep.No.1274, *supra*, at 23–24, is again substantively the same.

4. The result reached in the *Renoir* case is now required by 26 U.S.C. § 911(c) (3), added to the Internal Revenue Code by the Revenue Act of 1962, Pub.L.No. 87–834 § 11, 76 Stat. 960.

reside in community property States or elsewhere. * * * [*Id.* at 53.] The court further commented:

Although the theories discussed in the cases are not always consistent and at times are even confusing, there is nevertheless a discernable underlying principle that is common to virtually all of these cases, even though it may be articulated only on occasion, namely, that unless there is a clearly manifested legislative purpose to the contrary, the revenue laws will be interpreted in such manner as to prevent discrimination either for or against residents of community property States. * * * [*Id.* at 54.]

We believe there is a greater consistency in the theories espoused in these cases than the court in the *Ebberts* case suggests. Practically all of these cases can be meshed into a theory that views the marital community as an entity, much like a business partnership, where each spouse acts as an agent of the community and where the particular status of the spouse who, in fact, earns the income, can determine the treatment to be accorded to the other's interest in such income. There can be no doubt, however, that the underpinning of virtually all these cases is a desire by the courts to achieve uniformity among spouses from community property and common law states.

■ Plaintiffs' position in the instant case calls for an interpretation of Section 911 that discriminates in favor of spouses from community property states. Since there is no "clear-cut statutory mandate" for such preferential treatment, another important ground exists for holding against plaintiffs.

Plaintiffs mistakenly rely on Rev.Rul. 56–269, 1956–1 Cum.Bull. 318, which held that a nonresident alien wife's share of the community income derived from the performance of personal services by her husband, a United States citizen and domiciliary of a community property state, for the United States Government in a foreign country would be exempt from Federal income tax by operation of Sections 871 and 862(a) (3) of the Internal Revenue Code of 1954. Under Section 871 a nonresident alien may be taxed only on income derived from sources within the United States. Under Section 862(a) (3), compensation for personal services performed without the United States is treated as income from sources without the United States. Since Section 911(a) of the Code, applicable to compensation for services performed in a foreign country, merely denies citizens an exemption for amounts paid by the United States without deeming such amounts to be derived from sources within the United States, the nonresident alien wife's share does not lose its identity in her hands as income from sources without the United States.

Plaintiffs contend that if the income in the nonresident alien wife's hands loses its identity as United States salary paid to a serviceman, then it must also lose this identity in the hands of a wife who is a citizen. However, Rev.Rul. 56–269, *supra,* does not hold that the income loses its identity as United States salary in the hands of the wife. It implicitly recognizes that it retains such identity, and then goes on to note that Section 911 does not prevent such amounts from being considered income from sources without the United States for purposes of Section 862, and thus exempt from taxation, in the case of nonresident aliens under Section 871.

■ Plaintiffs further contend that Article I, Section 8 of the Constitution requires that persons from the same state be treated alike, such as two husbands, one married to a nonresident alien and the other to a United States citizen. This contention is easily answered. Such husbands are, in fact, treated alike. The husband married to a nonresident alien would be taxable on his share of the United States salary just like Edward. The wives are admittedly treated differently, since the nonresident alien wife is exempt from taxation on her share of the salary, whereas Joan, a citi-

zen, is taxed. However, there is no constitutional requirement that a citizen be treated in a manner identical to a nonresident alien. A nonresident alien owes no allegiance to the United States or its Constitution and does not receive the same rights, privileges, and protection accorded to citizens by our laws.

Furthermore, the Congressional objectives underlying the limitations in Section 911 would be frustrated if plaintiffs were to prevail. American citizens who earn income abroad are not taxed on this income in order to aid foreign trade and to put these Americans on an equal footing with their foreign competitors by avoiding double taxation and leaving them subject only to the income tax imposed by the country where they work. Congress, however, realized that such considerations were not applicable to Government employees who are generally protected from foreign taxation by treaty. In fact, Naval officers were specifically mentioned by Congress in the legislative history. See discussion of such legislative history in Commissioner of Internal Revenue v. Wolfe, 124 U.S.App.D.C. 45, 361 F.2d 62, 66–67 (1966), cert. denied, 385 U.S. 838, 87 S. Ct. 86, 17 L.Ed.2d 72 and Krichbaum v. United States, 138 F.Supp. 515, 519–520 (E.D.Tenn.1956). In the instant case the Naval salary paid by the United States to plaintiffs while residing in Japan was exempt from Japanese income tax.[5] If Joan's one-half interest in such salary were exempt from United States income tax, plaintiffs would avoid tax entirely on half their income.

For all the reasons mentioned above, we find that Joan's one-half community interest in her husband's salary was not exempt from taxation under Section

5. The Income Tax Treaty with Japan, signed April 16, 1954, as amended by Protocol signed May 7, 1960, effective January 1, 1964, 15 U.S.T. 1539, Part 2, provides in Article X, as follows:

"(1) (a) Salaries, wages, or similar compensation, and pensions or annuities paid by, or paid out of funds created by, the Government of the United States to an

911(a) (2) of the Code since it was paid by the United States.

Accordingly, plaintiffs' motion for judgment on the pleadings is denied, defendant's motion for summary judgment is granted, and plaintiffs' petition is dismissed.

individual who is a citizen of the United States (other than an individual who has been admitted to Japan for permanent residence therein) with respect to services rendered as an employee of the Government of the United States in the discharge of governmental functions shall be exempt from tax by Japan."