EDWARD R. FINK AND JOAN O. FINK, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 619–71.   Filed September 10, 1973.

Edward R. Fink, pro se.
*F. Patrick Matthews*, for the respondent.

OPINION

FORRESTER, *Judge:* Respondent has determined a deficiency of $799.49 in petitioners' income tax for the calendar year 1966. The issues for our decision are the following: (1) Whether petitioners are precluded by collateral estoppel from arguing that it is unconstitutional to deny them an exemption under section 911(a)(2), I.R.C. 1954, for the wife's "community share" of salary paid her husband by the U.S. Government, because such share is not income within the scope of the 16th amendment to the Constitution of the United States; (2) if we find that collateral estoppel does not so operate, whether such share is income within the meaning of the 16th amendment; (3) whether petitioners are precluded by collateral estoppel from attacking a denial of a section 911(a)(2) exemption on the ground that such denial would be a violation of the uniformity of taxation provision in article I, section 8, of the Constitution; (4) if we find that collateral estoppel does not operate as to the argument described in (3), whether a denial of the section 911(a)(2) exemption to petitioners is unconstitutional under article I, section 8.

All of the facts have been stipulated and are so found.

Petitioners Edward R. Fink (hereinafter referred to as petitioner) and Joan O. Fink (Joan) are husband and wife who, at all times pertinent to this case, were citizens of the United States and domiciliaries of the State of Washington, a community property State. They

filed their joint Federal income tax return for the calendar year 1966 with the director of international operations, Internal Revenue Service, Washington, D.C.

Pursuant to petitioner's Navy orders, he and Joan left their home in Seattle, Wash., sometime in 1965, and took up residence in Sasebo, Japan, the home port of the flagship to whose staff petitioner was attached. They retained their residence in Sasebo from April 16, 1965, to July 1967, while petitioner served with the Seventh Fleet.

During this period, petitioner received his salary from the United States for services he rendered to the U.S. Navy. Joan was strictly a housewife, and performed no services for the United States.

On his 1966 joint return, petitioner claimed an exemption under section 911(a)(2) for one-half of the salary he had received from the U.S. Government. This sum represented Joan's share under the community property law of the State of Washington, of his Navy salary. In his notice of deficiency, respondent disallowed such exemption in full, but because by so doing he thereby increased petitioner's adjusted gross income, he also increased the allowable standard deduction in the requisite amount.

This same issue has already been litigated between the parties in the instant case with respect to the 1965 calendar year. On his 1965 joint return, petitioner claimed the same exemption he is claiming here. After respondent had disallowed such exemption, petitioner paid the deficiency assessed on his return and sued in the Court of Claims for a refund. Thus, except for the year in issue, all facts were identical for the 2 years. The Court of Claims has denied the claimed exemption and certiorari has been denied. *Fink* v. *United States*, 454, F. 2d 1387 (Ct. Cl. 1972), certiorari denied 409 U.S. 844 (1972).

The first issue for our decision is whether petitioner is precluded by collateral estoppel from arguing that it is unconstitutional to deny him the section 911(a)(2)[1] exemption for Joan's share of his Navy salary under the community property laws of the State of Washington. Petitioner argues that such share, if deemed to have been paid by the Government to Joan, would not be income within the meaning of

---

[1] SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) PRESENCE IN FOREIGN COUNTRY FOR 17 MONTHS.—In the case of an individual citizen of the United States who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such 18-month period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).

the 16th amendment to the Constitution. It is respondent's contention that such argument was rejected by the Court of Claims and that hence, under the doctrine of collateral estoppel, petitioner is precluded from making the same argument in this Court. Petitioner, while admitting that the argument was presented in the Court of Claims and litigated between the parties, contends that the Court of Claims ignored the 16th amendment issue in its written opinion. He urges that collateral estoppel should not operate as to an issue when a court, in its written opinion, does not explicitly discuss and decide such issue. Petitioner also argues that collateral estoppel should not apply because the legal climate has changed since the decision in *Fink* v. *United States, supra.* We reject both of petitioner's contentions and find that he is now collaterally estopped from making the 16th amendment attack.

The doctrine of collateral estoppel as applied to Federal tax cases operates to prevent relitigation of matters between the same parties and their privies when such matters "were actually litigated and determined in the first proceeding." *Commissioner* v. *Sunnen*, 333 U.S. 591, 598 (1948).[2] Such matters include "issue[s] or points controverted, upon the determination of which the finding or verdict was rendered." *Commissioner* v. *Sunnen, supra* at 598, quoting from *Cromwell* v. *County of Sac*, 94 U.S. 351, 353 (1876). Collateral estoppel will operate, however, only when the controlling facts and legal rules are the same in the prior and subsequent proceedings. Significant changes in the legal climate may necessitate a relitigation of the issue. *Commissioner* v. *Sunnen, supra* at 599–600, 605–607.

In the instant case, petitioner does not argue that an identical 16th amendment attack was not presented and thoroughly litigated before the Court of Claims, but contends, without citing any authority which would support his position, that the mere fact that the court there did not specifically answer his argument in its written opinion is enough to warrant the rejection of respondent's collateral estoppel defense.

Petitioner's contention, however, overlooks the immediate aim of the doctrine of collateral estoppel, which is to prevent, as between the same parties and their privies, needless relitigation of issues necessarily determined by a court in a prior proceeding. *Tait* v. *Western Md. Ry. Co.*, 289 U.S. 620, 624 (1933). By not allowing such relitigation, judicial energy is conserved, and the parties are able to reasonably rely on the fact that having once fought over such an issue, within a particular factual and legal context, they will not be compelled to

---

[2] Because different taxable years are involved, collateral estoppel rather than res judicata is the appropriate doctrine to be considered in the instant case. *Commissioner* v. *Sunnen,* 333 U.S. 591, 598 (1948).

do so again.[3] Under the aforementioned rationale, it is clearly appropriate that an issue should be deemed to have been determined when, because of the decision a court reaches in a particular case, the party's position on such issue must necessarily have been accepted or rejected. The failure of the court to note such issue in its written opinion, after such has been properly raised and litigated, can be traced to a number of possible reasons. The court may have felt that by its stand on one matter, its stand on the issue in point was so obvious as to make unnecessary a further discussion. Or the court may simply have found the particular argument advanced by the party to be frivolous. None of such reasons, however, makes the actual decision any less a determination of those "necessarily decided" issues than if the court had fully and explicitly dealt with each in its written opinion. We would have to have before us rather strong evidence of judicial impropriety before we would trace any such omission from the written opinion to negligence, or to a deliberate decision by the court to avoid an issue not otherwise capable of being avoided.

In light of such considerations, we find it entirely appropriate, as have other courts (cf. *Paine & Williams Co.* v. *Baldwin Rubber Co.*, 113 F. 2d 840, 843 (C.A. 6, 1940); *Hyman* v. *Regenstein*, 258 F. 2d 502, 511 (C.A. 5, 1958), certiorari denied 359 U.S. 913 (1959); *Lynne Carol Fashion, Inc.* v. *Cranston Print Works Co.*, 453 F. 2d 1177, 1183 (C.A. 3, 1972)), to look beyond the written opinion in the prior proceeding, and determine, in light of the arguments there raised and litigated by the parties, and in light of the court's decision, which of such arguments was necessarily accepted or rejected by the court in reaching its decision. Cf. *James Talcott, Inc.* v. *Allahabad Bank, Ltd.*, 444 F. 2d 451, 460 (C.A. 5, 1971), certiorari denied 404 U.S. 940 (1971); 1B Moore, Federal Practice, par. 0.443[4], p. 3913.

Applying such an analysis to petitioner's 16th amendment argument in the instant case, we find that the court in *Fink* v. *United States*, *supra*, necessarily ruled on such 16th amendment contention.

It was petitioner's argument before the Court of Claims, as it is here, that Joan received her share of petitioner's salary, not from the U.S. Navy, but rather from her husband as a result of Washington's community property laws. He there contended, as he now contends, that for the court to adopt a concept of community property under which Joan's share of petitioner's salary would be deemed to have come from the U.S. Navy, hence denying petitioner the section 911

---

[3] The Supreme Court has advanced a more sweeping rationale for the doctrine:

"Its enforcement is essential to the maintenance of social order; for, the aid of judicial tribunals would not be invoked for the vindication of rights of persons and property, if, as between parties and their privies, *conclusiveness did not attend the judgment* of such tribunals in respect of all matters properly put in issue and actually determined by them. [*Southern Pacific Railr'd* v. *United States*, 168 U.S. 1, 49 (1897).]"

(a) (2), exemption, would result in an expansion of the concept of income beyond that allowed by the 16th amendment.

In the face of this argument, the Court of Claims went ahead and adopted such a theory, and as a result found that petitioner was entitled to no exemption. *Fink* v. *United States*, 454 F. 2d at 1390–1393. In view of what petitioner does not dispute was a thorough presentation of his constitutional argument to the Court of Claims, that court's adoption of a theory of community property under which it held that petitioner was not entitled to an exemption, must necessarily have included a determination that such denial was not unconstitutional. For constitutionality under the 16th amendment was an issue which if decided in favor of petitioner, would have required a decision allowing him an exemption. Thus, because of the decision of the Court of Claims petitioner's argument was one which the Court of Claims had to reach and reject. Cf. *James Talcott, Inc.* v. *Allahabad Bank, Ltd., supra* at 440. For us to find that the Court of Claims did not determine such issue would in effect require a finding on our part that the judges on that court acted in bad faith in rendering a decision in petitioner's case, and simply and unjustifiably ignored an argument presented to them. Under the facts in the instant case, such a finding would be totally unwarranted.

Petitioner cited a number of cases in alleged support of the position he has taken. All of these cases, however, are clearly distinguishable. In *Murial Dodge Neeman*, 26 T.C. 864, 866–867 (1956), affirmed per curiam 255 F. 2d 841 (C.A. 2, 1958), certiorari denied 358 U.S. 841 (1958), we refused to allow a defense of collateral estoppel on a constitutional issue where, in the prior proceeding (*Muriel Dodge Neeman*, 13 T.C. 397, 399 (1949), affirmed per curiam 200 F. 2d 560 (C.A. 2, 1952), certiorari denied 345 U.S. 956 (1953)), we had explicitly declined to consider the constitutional issue on the grounds that it had not been presented in the pleadings.

In *Pelham Hall Co.* v. *Hassett*, 147 F. 2d 63, 67–68 (C.A. 1, 1945), it was found by the First Circuit, both from its own independent study, as well as from a precise stipulation entered into by the parties, that the issue before it had not been raised at all in the prior proceeding. In the instant case, petitioner has expressly relied on the fact that his 16th amendment contention was at issue and thoroughly argued before the Court of Claims. Finally, petitioner cites *Tutt* v. *Doby*, 459 F. 2d 1195 (C.A.D.C. 1972), a case in which it had not been within the jurisdiction of the court in the prior proceeding to directly consider the argument raised. For this reason, the court in the subsequent proceeding found that the argument had not been before the court in the earlier proceeding and had, thus, not been decided. *Tutt* v. *Doby, supra* at 1198–1199.

Petitioner's "change in the legal climate" argument is that at the time of the trial in the Court of Claims, a value added tax was "in the news," but that President Nixon has since determined that such a Federal tax is unnecessary. Suffice it to say that we fail to see any connection between consideration of a value added tax and the denial of a section 911(a)(2) exemption to Joan's community property share of petitioner's Navy income.[4]

The next issue for our decision is whether petitioner is precluded by collateral estoppel from arguing that the denial of the section 911(a)(2) exemption to his wife's community property share of his salary is a violation of the uniformity of taxation provision in article I, section 8, of the Constitution.[5]

The Court of Claims explicitly rejected such an attack in its opinion 454 F. 2d at 1393-1394. Because such issue was thus litigated and determined as between the same parties in an identical factual and legal situation, we find that petitioner is precluded by collateral estoppel from making such argument in the instant case, and we will not now consider it. *Commissioner* v. *Sunnen*, 333 U.S. at 598; *George Kemp Real Estate Co.*, 17 T.C. 755, 761-762 (1951), affirmed per curiam 205 F. 2d 236 (C.A. 2, 1953), certiorari denied 346 U.S. 876 (1953).

Because we uphold respondent's disallowance of an exemption to petitioner under section 911(a)(2), we also find that petitioner is entitled to a requisite increase in his standard deduction.

*Decision will be entered for the respondent.*

---

[4] Petitioner's point seems to be that in the legal climate of the period during which the Court of Claims heard the case, there was some feeling "in the news" that the Federal power to levy taxes should not be restricted by constitutional considerations, and that the Court of Claims and quite possibly the Supreme Court were affected by such feeling. Petitioner, however, presents us with no evidence to sustain such farfetched contentions, and we indeed strongly doubt whether any such evidence could in fact be produced.

[5] In his petition to this Court, petitioner listed the fifth amendment as one of the provisions of the Constitution upon which he relied in attacking respondent's actions. On brief, however, petitioner makes no mention of such provision, and appears to have abandoned his reliance on it. In any case, petitioner did make a fifth amendment plea to the Court of Claims, and under our analysis, *supra* at 869-871 we would consider it to have been determined for the purpose of collateral estoppel.

