T.C. Memo. 1998-429


UNITED STATES TAX COURT


GEORGE S. BECK AND FRELA D. BECK, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11549-96.                    Filed December 7, 1998.


George S. Beck and Frela D. Beck, pro sese.

Howard P. Levine and William W. Kiessling, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


VASQUEZ, Judge:  Respondent determined deficiencies of
$1,570 and $570 in petitioners' 1992 and 1993 Federal income
taxes, respectively.[1]

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
(continued...)

The issues for decision are: (1) Whether petitioners are entitled to exclude all of their income from Federal income taxation, and (2) whether petitioners are entitled to deduct payments made into a reserve account.

FINDINGS OF FACT

The parties submitted this case fully stipulated. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Petitioners resided in Cherokee, North Carolina, at the time they filed their petition.

Petitioner Frela D. Beck is an enrolled member of the Eastern Band of the Cherokee Indians. During 1992 and 1993, petitioners owned and operated apartment buildings located on a Cherokee Indian Reservation in North Carolina. The legal title to the land on which the apartment buildings sit is vested in the United States of America and held in trust for the Eastern Band of Cherokee Indians.

Petitioners entered into a loan agreement in the amount of $376,000 with the Farmers Home Administration (FmHA) of the U.S. Department of Agriculture in order to construct the apartment buildings. The loan agreement required petitioners to deposit a total of 10 percent of the loan amount into a reserve account.

---

[1](...continued)
Procedure.

These deposits were to be made over a period of 10 years. The primary purpose of the reserve account was to provide funds to meet the major capital needs of the project.

During 1992 and 1993, petitioners deposited $3,873 and $3,760, respectively, into the reserve account. During those years, no funds were disbursed from the reserve account for expenses.

On petitioners' 1992 and 1993 Federal income tax returns, petitioners deducted the amounts deposited into the reserve account during those years. In the statutory notice of deficiency, respondent denied petitioners' claimed deductions for these payments. Respondent also denied petitioners' claim for refund for all taxes paid relating to their 1992 and 1993 income.

OPINION

## I. Taxability of Petitioners' Income

Petitioners argue that (1) Native American Indians are not taxable under the Constitution and its amendments, and, in the alternative, (2) the Cherokee Treaty of 1866 (the 1866 Treaty), 14 Stat. 799, exempts their income from taxation.

### A. Constitutional Arguments

There is well-established case law holding that Native American Indians are taxable unless specifically exempted by a Federal statute or treaty. See Squire v. Capoeman, 351 U.S. 1, 6 (1956); Dillon v. United States, 792 F.2d 849 (9th Cir. 1986),

affg. <u>Cross v. Commissioner</u>, 83 T.C. 561 (1984); <u>Karmun v. Commissioner</u>, 749 F.2d 567 (9th Cir. 1984), affg. 82 T.C. 201 (1984); <u>Jourdain v. Commissioner</u>, 71 T.C. 980 (1979). Petitioners urge us to reconsider all established case law on this point and find it in error.  We decline to do so.

B.  <u>Cherokee Treaty of 1866</u>

Petitioners alternatively argue that their income is specifically excluded by the 1866 Treaty.  As noted above, Native American Indians are subject to Federal income taxation unless an exemption can be found in a Federal statute or treaty.  See <u>Squire v. Capoeman</u>, <u>supra</u>.  Petitioners argue that the 1866 Treaty confers such an exemption and specifically point to the language contained in Article 10 of the 1866 Treaty as evidence of this.

Respondent argues that petitioners should be collaterally estopped from raising this issue because this issue has already been considered and decided by this Court in <u>Beck v. Commissioner</u>, T.C. Memo. 1994-122 (Beck I), affd. without published opinion 64 F.3d 655 (4th Cir. 1995).  The following conditions must be met for collateral estoppel to apply:

> (1) The issue in the second suit must be identical in all respects with the one decided in the first suit.
> (2) There must be a final judgment rendered by a court of competent jurisdiction.
> (3) Collateral estoppel may be invoked against parties and their privies to the prior judgment.

(4) The parties must actually have litigated the issues and the resolution of these issues must have been essential to the prior decision.

(5) The controlling facts and applicable legal rules must remain unchanged from those in the prior litigation. [Peck v. Commissioner, 90 T.C. 162, 166-167 (1988); citations omitted.]

Collateral estoppel is "designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." Commissioner v. Sunnen, 333 U.S. 591, 599 (1948). By denying relitigation, judicial energy is conserved, and parties may reasonably rely on the fact that they will not have to relitigate issues that have already been determined by a court. See Fink v. Commissioner, 60 T.C. 867 (1973), affd. 512 F.2d 674 (9th Cir. 1975).

In Beck I, this Court rendered a final judgment. The parties in Beck I and this case are identical. Since the decision in Beck I, the controlling facts and applicable legal rules have not changed. The sole question is whether the issue decided in Beck I is identical in all respects to the issue in this case. If the issues are identical, then collateral estoppel applies because the issue was fully litigated and essential to the decision in Beck I.

In Beck I, petitioners claimed that their rental income was exempt from taxation by article 10 of the 1866 Treaty, 14 Stat. 801. In that case, we held:

The 1866 Treaty simply does not provide petitioners with an express restriction on the ability of the United States to tax income. There is no textual support for petitioners' contention. Article 10 plainly does not refer to an exemption from income tax, and we cannot create one by implication. [Citation omitted.]

In the case at bar, petitioners argue that all of their income, not only their rental income, is exempted by the same article of the 1866 Treaty.

We find that this issue is identical in all respects to the issue decided in Beck I. We therefore conclude that petitioners are collaterally estopped from rearguing this issue.

Accordingly, we hold that petitioners may not exclude their income from taxation. We have considered the remainder of petitioners' arguments, and we find them to be irrelevant or without merit.

## II. Deductibility of Reserve Account Deposits

Pursuant to petitioners' loan agreement with the FmHA, petitioners deposited $3,873 and $3,760 into a reserve account during 1992 and 1993, respectively. Petitioners deducted these amounts on their 1992 and 1993 Federal income tax returns. Respondent argues that deposits made into a reserve account are not deductible until withdrawn and used to pay a deductible expense. We agree with respondent.

A cash basis taxpayer generally may deduct business expenses in the taxable year in which the expenses are paid. Sec. 1.461-

1(a)(1), Income Tax Regs.  It is a well-established principle that a contribution to a reserve account for future liabilities is not deductible.  See <u>Sebring v. Commissioner</u>, 93 T.C. 220 (1989); <u>World Airways, Inc. v. Commissioner</u>, 62 T.C. 786 (1974); <u>Commercial Liquidation Co. v. Commissioner</u>, 16 B.T.A. 559 (1929). The contribution may become deductible once it is withdrawn and used to pay a definite liability.  See <u>Sebring v. Commissioner</u>, <u>supra</u> at 225.

None of the deposits into the reserve account were withdrawn and used to pay deductible expenses during 1992 or 1993.  We therefore conclude that petitioners are not entitled to deductions for their deposits into the reserve account for 1992 or 1993.

III.  <u>Section 6673 Penalty</u>

Section 6673(a)(1) provides that, whenever it appears to the Tax Court that proceedings have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, the Court may impose a penalty not in excess of $25,000.  A petition to the Tax Court is frivolous "if it is contrary to established law and unsupported by a reasoned, colorable argument for change in the law."  <u>Coleman v. Commissioner</u>, 791 F.2d 68, 71 (7th Cir. 1986). Based on well-established law, petitioners' positions are frivolous and groundless.

The circumstances in this case may merit the imposition of a penalty under section 6673; however, we shall not now impose such a penalty. We take this opportunity to caution petitioners that we will strongly consider imposing such a penalty if they return to this Court in the future with similar arguments; i.e., that Native American Indians are not taxable under the Constitution.

To reflect the foregoing,

Decision will be entered for respondent.