Cecil **TUTT**, Appellant,

v.

Lewis **DOBY**, Appellee.

No. 24248.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 16, 1971.

Decided March 16, 1972.

Miss Marilyn Fisher, Washington, D. C., with whom Messrs. C. Christopher Brown, Baltimore, Md., and Richard B. Wolf, Washington, D. C., were on the brief, for appellant.

Mr. Herman Miller, Washington, D. C., for appellee.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and MacKINNON, Circuit Judges.

LEVENTHAL, Circuit Judge:

In 1967, landlord Lewis Doby filed a suit for possession of an apartment against his tenant, Cecil Tutt, in the Landlord and Tenant Branch of what was then the District of Columbia Court of General Sessions. The complaint alleged that Tutt was in default for $275 rent. The complaint was served by a United States Marshal by "posting" on the door to the apartment. A default judgment was entered fifteen days after the action was filed when Tutt failed to appear. Tutt then vacated the premises.

In 1968, Doby sued Tutt again, this time for $275 plus interest. This action was grounded in the non-payment of the rent which had given rise to the possessory action the year before.[1] He obtained a summary judgment, which the District of Columbia Court of Appeals (DCCA) affirmed.

The DCCA stated: "A judgment in a suit for possession, including one by default, is res judicata as to those issues litigated and determined therein in any subsequent suit for rent." It held that Doby's entitlement to the $275 was conclusively established by the first lawsuit under principles of res judicata.[2] We reverse.

## I.

While the term res judicata is sometimes used broadly, as in the DCCA opinion, it may help analysis to confine it to its classic and precise reference, as interposing an absolute bar to the relitigation of the same cause of action between the parties or their privies. If the doctrine of res judicata applies, both parties are concluded, not only as to things which were determined but as to all matters which might have been determined as well. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195 (1877); Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

The case before us involves what is more precisely referred to as the doctrine of collateral estoppel. That rule prohibits parties who have litigated one cause of action from relitigating in a second and different cause of action matters of fact which were, or necessarily must have been, determined in the first litigation. That collateral estoppel is the principle involved in the case at bar ensues from the condition that an action for money due is different from a possessory action to recover property or its use. These actions are differently focused, they serve different purposes, and are governed by significantly different procedures. Our statutes provide a landlord with a summary action for possession. 16 D.C.Code §§ 1501–1503, 45 D.C.Code § 910. This action may be begun without personal service of process; if no person can be found for service of process, the complaint may be "posted" upon the door of the dwelling, or elsewhere on the premises "where it may be conveniently read." 16 D.C.Code § 1502.

1. Tutt filed an offset for the same amount and a counterclaim for $500, alleging that Doby had broken his contract by failure to maintain the premises.

2. The DCCA expressed "some doubt that res judicata would apply as to the actual amount of rent due in the isolated instance where there was no personal service, no appearance by the tenant, and no evidence that the tenant had such notice of the suit that it could be said his default was the result of a voluntary and deliberate choice not to defend," but thought that if such had been the case here, the tenant would have noted it in opposing the motion for summary judgment.

On the other hand, if the landlord seeks a money recovery, process must be served personally. Paregol v. Smith, 103 A.2d 576 (D.C.Mun.App.1954); Mahoney v. Campbell, 209 A.2d 791 (D.C. App.1965). And if the landlord seeks to combine repossession and a money recovery, personal service is requisite. Bell v. Tsintolas Realty Co., 139 U.S.App.D.C. 101, 430 F.2d 474 (1970).

■ There are special considerations that justify a summary proceeding limited to recovery of possession from a tenant no longer entitled to remain. See Lindsey v. Normet, 405 U.S. 56, 92 S. Ct. 862, 31 L.Ed.2d 36 (1972):

> There are unique factual and legal characteristics of the landlord-tenant relationship that justify special statutory treatment inapplicable to other litigants. The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the landlord, continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease or rental agreement gives him the right to peaceful and undisturbed possession of the property. Holding over by the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute.

The summary procedure is provided by the legislature to provide Court relief to the landlord, otherwise trapped by the "relatively slow, fairly complex and substantially expensive procedure" of the common law possessory action of ejectment; to avoid resort to self-help and force, condoned at common law as justified; and to permit an expeditious judicial determination of what remains a possessory action.

While there is no summary action for money due, the provision of a summary proceeding for the possessory action harmonizes considerations of fairness with the felt need for expedition in settling possessory rights. On the one hand, there is need for dispatch in determining the right of the businessman to occupancy of rented premises. On the other hand, tenants may be relatively unconcerned with the matter of possession—they may indeed be ready to quit the premises of the landlord with whom they have had bitter disputes—but may be far from acquiescent on the matter of whether, and how much, money is owed.

## II.

■ The summary action determines who is entitled to possession. In order to find that the landlord is entitled to possession for non-payment of rent, the court must find that tenant owes landlord some rent. But the court has only a collateral or incidental interest in any consideration of how much rent is due. The "significance of what a court says it decides is controlled by the issues that were open for decision." Angel v. Bullington, 330 U.S. 183, 187, 67 S.Ct. 657, 660, 91 L.Ed. 832 (1947). And the Landlord and Tenant Branch had no jurisdiction, in the absence of personal service of process, to enter a judgment for the landlord for the amount of rent due. The amount of rent due was not genuinely before the court, and it cannot be said to have "decided" the question, therefore, for purposes of raising a later estoppel. The applicable rule is stated in the Restatement, Judgments, § 71:

> Where a court has incidentally determined a matter which it would have had no jurisdiction to determine in an action brought directly to determine it, the judgment is not conclusive in a subsequent action brought to determine the matter directly.

■ We do not think this principle can be set aside by the circumstance that where a tenant is seeking to retain possession the court may fix an amount which, if paid, will effectuate the objective of avoiding eviction.[3] The authority to limit the possessory relief within the court's jurisdiction—by giving defendant tenant a power conditional upon the payment of money—does not establish a right to provide relief outside the court's jurisdiction. With a tenant in default, the amount of rental due was neither determined in fact nor necessarily determined,[4] for it was not genuinely before the court, except in an incidental sense that is too insubstantial for estoppel doctrine.

### III.

As we have already brought out, the issue of rental due was not really "before" the trial court, and in no substantial sense could it be said to have been "necessarily determined" within the doctrine that once turned on that concept (see note 4). The rule requiring reversal is intertwined with, and is given support and perspective by, the doctrine that collateral estoppel essentially applies only to matters actually litigated and determined in the first action.

The underlying principle is stated in the Restatement, Judgments, § 68(2):

A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action as to

questions of fact not actually litigated and determined in the first action.

This rule is supported not only by general considerations of justice, but by pertinent precedent.

■ The doctrine of collateral estoppel is intended to discourage splitting causes of action or defenses, thus wasting valuable judicial resources and imposing needless burdens on parties-defendant. It is a "measure calculated to save individuals and courts from the waste and burden of relitigating old issues." Tillman v. National City Bank of New York, 118 F.2d 631, 634 (2d Cir.), cert. denied, 314 U.S. 650, 62 S.Ct. 96, 86 L.Ed. 521 (1941).

We refer to the Supreme Court's rulings in the closely related area of consent judgments, which have limited the collateral estoppel doctrine, saying that the spirit of justice requires the doctrine to be limited to cases where there was "an adjudication on the merits," United States v. International Building Co., 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182 (1953), and that the doctrine should apply only as to "issues actually litigated and determined in the prior suit," Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). The possibility that the same principles were applicable to limit estoppel in case of a default judgment was noted but not decided in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 157, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

3. That the Landlord and Tenant Branch or similar courts may give a tenant a conditional power to avoid eviction upon payment of the rent due plus costs, see Trans Lux Radio City Corp. v. Service Parking Corp., 54 A.2d 144 (D.C. Mun.App.1947) and the cases cited therein.

4. The DCCA cited David v. Nemerofsky, 41 A.2d 838 (D.C.Mun.App.1945), and following cases, Brown v. Southall Realty Co., 237 A.2d 834 (D.C.App.1968); Bess v. David, 140 A.2d 316 (D.C.Mun. App.1958).

David v. Nemerofsky held that res judicata applies, not merely as to matters which were actually controverted

in the first action, but also as to all facts which were necessarily found therein in order to support the first judgment. It quoted with approval (41 A.2d at p. 839) the following from McCotter v. Flinn, 30 Misc. 119, 61 N.Y. S. 786, 787:

A judgment taken by default in summary proceedings by a landlord for non-payment of rent is conclusive between the parties as to the existence and validity of the lease, the occupation by the tenant, and that rent is due, and also as to any other facts alleged in the petition or affidavit which are required to be alleged as a basis of the proceedings.

■ There may be room for expanding the doctrine of collateral estoppel beyond matters actually litigated and determined where the conclusive effects of the prior judgment were reasonably foreseen. This is suggested in Moore's Fed.Prac. Vol. 1B, ¶ 0.444 [5] which states that the principle of collateral estoppel is not properly applicable "to unlitigated issues underlying default or consent judgments . . . unless it could be said that the parties could reasonably have foreseen the conclusive effect of their actions."

There is no just basis for saying that a tenant defaulting in a possessory action either intends to acquiesce in the allegation of rent due, or has reason to foresee this effect.[6] His default is congruent with a simple conclusion that he is no longer interested in possession, or does not have the resources or energy to contest that prayer for possessory relief.

■ This principle for limitation of collateral estoppel effect of default judgments is rooted in the interest of justice, not only to the particular parties, but in overall administration. The doctrine of collateral estoppel is intended to curtail needless relitigation. If it were construed to require litigation by a tenant who does not contest the possessory relief sought, it would undermine the utility and indeed the very premise of the summary procedure, that expedition is appropriate because all that is involved is possession. The docket of the Landlord and Tenant Branch is crushing. We are advised that in 1969, 118,811 possessory cases were filed, almost 80,000 resulted in default judgments, and another 32,000 were dismissed. Only a very small percentage of the cases—about 3%—ever got beyond the threshold stage. If a tenant is ready to yield the possession that gives the landlord all the relief he sought in the possessory action, it is neither good administration nor just to require that proceeding to be delayed or protracted so as to litigate the issue of rent. That issue should be litigated separately, and de novo, according to the notice provided by law for personal actions for rent due.

### IV.

Prior to passage of the D.C. Court Reorganization Act of 1970, this court accorded substantial deference to the District of Columbia Court of Appeals on questions of local law. Fields v. District of Columbia, 131 U.S.App.D.C. 346, 404 F.2d 1323 (1968). Following passage of that act, this court has refrained from exercise of its jurisdiction retained during the transition period, when the DCCA's disposition proved to turn on a mere procedural rule. Wilson v. Pinkett, No. 24,292, order of the court, en banc, filed Jan. 13, 1972.

In the case at bar, however, we are confronted with a ruling that has fundamental import, perhaps even due process overtones. What the DCCA has done is to hold that a possessory action, on "posting" service, can do indirectly what it cannot do directly—make an authoritative determination of the rent due and

---

5. Even where issues have been litigated, the criterion of foreseeability serves to limit the estoppel effect of the first judgment. As noted by Judge Learned Hand in Evergreens v. Nunan, 141 F.2d 927, 929 (2d Cir.), cert. denied, Evergreens v. C. I. R., 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944):

> [I]t often works very harshly inexorably to make a fact decided in the first suit conclusively establish . . . a fact "ultimate" in the second. The stake in the first suit may have been too small to justify great trouble and expense in its prosecution or defense; and the chance that a fact decided in it, even though necessary to its result, may later become important between the parties may have been extremely remote. It is altogether right that the judgment shall forever put an end to the first cause of action; but it is not plain that it is always fair that every fact . . . decided in it, shall be conclusively established between the parties in all future suits, just because the decision was necessary to the result.

6. Vestal, Preclusion/Res Judicata Variables: Nature of the Controversy, 1965 Wash.U.L.Q. 158, 167.

subject to collection from the tenant, although the matter was never litigated by the tenant, and there was no personal service of the kind required by Congress in actions for rent, and generally considered as due process for actions in personam for money due.

The judgment will be vacated, and the case remanded for further proceedings in accordance with the opinion of this court.

So ordered.