TUITASI FAAMASANI, Petitioner-Complainant

v.

LUALEMAGA FALUI, Respondent

No. 2561-1973

High Court of American Samoa

Civil Jurisdiction, Trial Division

November 7, 1973

Dated this 7th day of November, 1973.

The dispute in this case arose out of the senatorial elections of 1972. After a meeting, and election of the Leasina County Council on November 18, 1973, the County Chief (Fofo) certified Tuitasi Faamasani (hereinafter Tuitasi) to the Election Commissioner. Lualemaga Faliu filed an objection to the certification with the Commissioner and also petitioned the High Court to order Fofo to certify his name (Lualemaga Faliu). CA 2504-72. Tuitasi was sworn in on January 3, 1973 assuming all the rights, duties, privileges, and trappings of a duly elected Senator, and acquiring the honor and prestige that go with such a high position.

Pursuant to a court order of January 8, 1973, on February 5, 1973, Fofo certified the name of Lualemaga Faliu to the Election Commissioner. Fofo's certification of Lualemaga Faliu purported to void his original certification of Tuitasi. CA 2504-72.

Meanwhile, with papers dated February 7 but not filed until February 14, 1973, Tuitasi moved to intervene and have the Court set aside its order in CA 2504-72. The

Petition was supported by affidavits of Tuitasi, Fofo as County Chief, and six other chiefs of Leasina County. All averred that the majority of the matais at the November 18th elections supported Tuitasi, that Lualemaga Faliu was not so supported, and some additionally swore that Lualemaga Faliu had only arrived in Samoa during November of 1972 (in effect, that he did not meet the Constitutional residency requirement. Constitution of American Samoa Article II, § 3). By order dated February 9, 1973, the Court refused untimely intervention, declined to overturn its order (requiring Fofo to certify Lualemaga Faliu) for lack of standing, and added that nevertheless the issues raised were not justiciable. The Court stated: "Our judgment in this case only operated to compel the County Chief to certify petitioner to the Election Commissioner, challenges to his seating on the grounds alleged here must be directed to the Senate." CA 2504-72.

Meanwhile, following a meeting of the Senate on February 4, 1973, Lualemaga Faliu was approved by that Body to be the Senator from Leasina County; he was sworn in on February 15, 1973.

The present action for declaratory relief, CA 2561-73, was commenced by complaint filed May 29, 1973. Petitioner Tuitasi seeks an affirmative declaration of his right to the Senate seat currently held by Lualemaga Faliu, the Respondent. In his brief, Petitioner asserts that CA 2504-72 is not res judicata of the present action and, that the Court has a duty to demand and to require compliance with the Constitution and the laws of American Samoa. In his answer to the complaint, Respondent, in effect, moved to dismiss for lack of jurisdiction.

We find that although the matters in issue are not controlled by principles of res judicata, the claim is not justiciable, and the Respondent's motion to dismiss is hereby granted.

■ It should be noted at the outset that a plea of res judicata is an affirmative defense which must be pleaded and proved by the party asserting it unless it appears affirmatively in the pleadings of the party against whom it is asserted. See *Hayles v. Randall Motor Co.*, 455 F.2d 169 (10th Cir. 1972); *National Lead Co. v. Nuisen*, 131 F.2d 51 (6th Cir. 1942).

■ A liberal reading of Respondent's answer in the instant action reveals, in essence, a motion to dismiss based in part upon the court's previous adjudication of lack of jurisdiction. A motion to dismiss is the proper procedure by which to raise the defense of res judicata. *Connelly Foundation v. School District of Haverford Township*, 326 F.Supp. 241 (D. Pa. 1971). Since Petitioner has also briefed the matter, arguing that CA 2504 (1972) is not res judicata in the instant action in his Memorandum of Law filed September 12, 1973, the Court will address that issue.

The doctrine of res judicata concerns the effect accorded a prior judgment in a later, related action. There are two main rules embodied in the doctrine: the first covers the effect of a judgment in a subsequent controversy involving the same cause of action, the second covering later controversies involving a different cause of action. See *Jefferson School of Social Science v. Subversive Activities Control Board*, 331 F.2d 76 (D.C. Cir. 1963); *Henderson v. United States Radiator Corp.*, 78 F.2d 674 (10th Cir. 1935); Scott, "Collateral Estoppel By Judgment," 56 Harv. L. Rev. 1 (1942).

The classic statement of the distinction between the effect of a judgment on a subsequent action involving the same or a different cause of action appears in *Cromwell v. Sac County*, 94 U.S. 351, 24 L.Ed. 195, 197–198 (1877): A judgment upon the merits constitutes an absolute *bar* to a subsequent action upon the same claim between the same

parties or those in privity with them; but if the second action between the same parties is upon a different claim or cause of action, the judgment in the prior action operates as an *estoppel* only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. Accord, *Partmar Corp. v. Paramount Theatres Corp.*, 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954). See Scott, "Collateral Estoppel By Judgment," 56 Harv. L. Rev. 1 (1942).

 The first rule embodied in the doctrine of res judicata, that which deals with repetitious suits involving the *same* cause of action, is usually referred to as the general rule of res judicata. See e.g., *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). The scope of the conclusiveness accorded the prior judgment in the subsequent action is quite broad. When a court of competent jurisdiction has rendered a final judgment on the merits of a cause of action it concludes "parties and those in privity with them, not only as to every matter which *was* offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which *might have been* offered for that purpose." *Cromwell v. Sac County*, 94 U.S. 351, 24 L.Ed. 195, 197 (1877) (Emphasis supplied). In other words, parties and their privies are forever barred from relitigating the same cause of action since entry of the judgment in the first action conclusively settles all matters that were or might have been determined therein. *Partmar Corp. v. Paramount Theatres Corp.*, 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954). Accord, *Tutt v. Doby*, 459 F.2d 1195 (D.C. Cir. 1972); *Flynn v. State Board*, 418 F.2d 668 (9th Cir. 1969) (per curiam). "The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties on any ground whatever, absent fraud or some other factor

invalidating the judgment." *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, 906 (1948).

The second rule embodied in the doctrine of res judicata comes into play when the subsequent suit involves a different cause of action; it is more precisely referred to as the doctrine of collateral estoppel. *Tutt v. Doby,* 459 F.2d 1195, 1197 (D.C. Cir. 1972). See *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, 906 (1948); Scott, "Collateral Estoppel By Judgment," 56 Harv. L. Rev. 1 (1942). Collateral estoppel also binds both parties and privies to the earlier action. *Southern Pacific R.R. v. United States,* 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355 (1897); *V & S Ice Machine Co. v. Eastex Poultry Co.,* 437 F.2d 422 (5th Cir. 1971); *Jefferson School v. Subversive Activities Control Board,* 331 F.2d 76 (D.C. Cir. 1963). But the scope of the conclusiveness accorded the prior judgment is much narrower when collateral estoppel, as opposed to the first or general rule of res judicata, applies. The parties and their privies "are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time" and are only estopped in the second proceeding from relitigating "matters which were actually litigated and determined in the first proceeding." *Commissioner v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, 906 (1948). Accord, *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); *Partmar Corp. v. Paramount Theatres Corp.,* 347 U.S. 89, 74 S.Ct. 414, 98 L.Ed. 532 (1954). See Scott, "Collateral Estoppel By Judgment," 56 Harv. L. Rev. 1 (1942). The doctrine of collateral estoppel, then, only stops parties or privies from relitigating a right, question, or fact, *actually* litigated and determined in the prior action.

Of the two rules embodied in the doctrine of res judicata, the first is a broad and the second a narrow application of

the general principle underlying the doctrine; namely, that matters already adjudicated should not be relitigated. "The purpose of the res judicata and estoppel doctrines is to avoid repetitious trials, to end litigation, to make a final determination of controversies and to avoid conflicting adjudication." *Wittenberg v. United States*, 304 F.Supp. 744 (D. Minn. 1969).

■ Requisite to the operation of either rule under the doctrine is the requirement of privity. The plea of res judicata does not apply against one who was neither a party or in privity with a party in the prior proceeding. *Mid-Continent Casualty Co. v. Everett*, 340 F.2d 65 (10th Cir. 1965); *Hughes v. Sun Life Assurance Co.*, 159 F.2d 110 (7th Cir. 1946); *McGhee v. United States*, 437 F.2d 995, 194 Ct. Cl. 86 (1971). See *Jefferson School of Social Science v. Subversive Activities Control Bd.*, 331 F.2d 76 (D.C. Cir. 1963); *Teitelbaum Furs, Inc. v. Dominion Insurance Co.*, 59 Cal.2d 601, 375 P.2d 439, 25 Cal. Rptr. 559 (1962). One who is neither a party or a privy is, in the eyes of the law, a stranger to the action. To hold that a judgment in a prior action was binding upon a stranger to that action in a subsequent proceeding would be a denial of due process. The doctrine of res judicata must conform to the mandate of due process that no person can be deprived of personal or property rights by a judgment without notice and an opportunity to be heard. *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d 892, 894 (1942). "The doctrine of *res judicata* rests at the bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had the opportunity to litigate the same matter in a former action in a court of competent jurisdiction. . . . The opportunity to be heard is an essential requisite of due process of law in judicial proceedings." *Postal Telegraph Cable Co. v. Newport*, 247 U.S. 464, 476 (1918) (Citations omitted).

Tuitasi was not a party to CA 2504. After the Court had issued its order requiring Fofo to certify Faliu, Tuitasi did in fact try to intervene; but the Court expressly ruled that since Tuitasi was not a party at the time of judgment he had no standing to appeal its judgment. See Opinion dated February 9, 1973.

■ Nor was Tuitasi in privity with a party to CA 2504. To be in "privity" the nonparty must be so identified in interest with a party to the former litigation that he represents the same legal right in respect to the subject matter involved. *Jefferson School of Social Science v. Subversive Activities Control Board*, 331 F.2d 76 (D.C. Cir. 1963). Accord, *Mpiliris v. Hellenic Lines Limited*, 323 F.Supp. 865 (D. Tex.) Affirmed, 440 F.2d 1163 (5th Cir. 1971). See also, Restatement of Judgments § 83, Comment a (1942). Tuitasi was not "identified in interest" with either of the parties to the prior litigation. It cannot be gainsaid that the interests of Faliu the party and Tuitasi the nonparty were actually adverse. Faliu sought the very seat Tuitasi occupied. Nor was there an identity of interest between Tuitasi and the other party, Fofo. Fofo was being sued in his official capacity, as County Chief. His position was, constitutionally, one of exalted neutrality: he was merely to certify the election results. In CA 2504 the question was whether he had performed this ministerial duty. The legal right he represented was the right of the county chief to certify the election results. It cannot now be held that in the former litigation Fofo represented the same legal right as Tuitasi with respect to the senate seat from Leasina County. Tuitasi's right with respect to the senate seat as candidate was to be certified if duly elected. Fofo's right was to do the certifying. There was therefore no privity between Fofo and Tuitasi in CA 2504.

Tuitasi, therefore, not being a party or privy is a stranger to CA 2504. To allow respondent in the present

action to assert a plea of res judicata based upon the earlier action *against* petitioner-Tuitasi, a stranger to the earlier action, would be a denial of due process. To be carefully distinguished, however, is the case where a stranger to the earlier action seeks to assert the judgment therein *against* a party or privy to the earlier action.

Of course, whenever the effect of a prior judgment upon a stranger's rights in a later action is spoken of, any effect accorded the prior judgment must arise through the operation of collateral estoppel. Since a different party is involved in the second action (the stranger to the first action), the "cause of action" must be different. Comment, "Developments in the Law of Res Judicata," 65 Harv. L. Rev. 818, 861–862 (1952). When we speak of the effect accorded an earlier judgment in a later proceeding involving a different cause of action, we are speaking of the second rule embodied in the doctrine of res judicata; that is, the doctrine of collateral estoppel. Because of the notice and opportunity to be heard requirements of due process a party or privy to a prior action cannot bind a stranger to any determination made in reaching the judgment. "Courts long assumed that the corollary must be true—if strangers are not bound by a judgment, they cannot obtain the benefit of it. This conclusion has been frequently expressed as the requirement of mutuality of estoppel." Id. For years the requirement of mutuality of estoppel was invoked to limit the scope of operation of the doctrine to parties and privies to the earlier. The mutuality limitation was rejected in the landmark decision by Chief Justice (then Justice) Traynor) in *Bernhard v. Bank of America*, 19 Cal.2d 807, 122 P.2d at 894–895, with quotations omitted and emphasis supplied:

The criteria for determining who may *assert* a plea of res judicata differ fundamentally from the criteria for determining *against* whom a plea of res judicata may be asserted. The requirements of

due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. . . . He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. . . . There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. . . .

In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party *against* whom the plea is asserted a party or in privity with a party to the prior adjudication?

■ There is no denial of due process when a stranger to an earlier action invokes it *against* a party or privy to the proceeding in a later action since that party or privy has had his day in court.

It has been recognized that rigid adherence to the mutuality requirement would actually defeat the policy underlying the doctrine of res judicata; namely, that there ought to be an end to litigation. See *Isreal v. Wood Dolson Co.*, 1 N.Y.2d 116, 134 N.E.2d 97 (1956). To preclude a stranger from estopping a relitigation of an issue by a person who has previously had a full opportunity to litigate it "would be to allow repeated litigation of identical questions, expressly adjudicated, and to allow a litigant having lost on a question of fact to re-open and re-try all the old issues each time he can obtain a new adversary not in privity with his former one." *Lober v. Moore*, 417 F.2d 714 (D.C. Cir. 1969).

To summarize. This is not a case of a stranger to an earlier action seeking to assert the judgment therein, in a

807

subsequent action, against one who was a party or privy to the prior proceeding. Rather, it is the converse. The question presented here is whether Respondent-Faliu, a party to CA 2504-72, can bind Petitioner-Tuitasi, a stranger to the previous proceeding, by the judgment rendered in that prior action. The answer is in the negative since to do so would be to deny petitioner due process of law.

Since Tuitasi is not bound under the doctrine of res judicata by the High Court's ruling in CA 2504 (1972) that his claim is not justiciable, the Court will proceed to consider this jurisdictional issue.

Resolution of the jurisdictional issue raised in the case requires a two step analysis. On the one hand, the Court must determine whether it has subject matter jurisdiction. On the other hand, the Court must determine whether, even having jurisdiction over the subject matter, it will exercise that jurisdiction, i.e., whether the claim is justiciable. See *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed. 491 (1969).

An extended analysis of subject matter jurisdiction in contests over legislative seats will be found in *Meredith v. Mola*, 4 A.S.R. 773 (1973) and *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). In *Meredith* the High Court outlined the three criteria necessary to give the Court subject matter jurisdiction: "1. the case must arise under the Constitution, laws or treaties; 2. it must involve a case or controversy; 3. the cause must be described in a jurisdictional statute." *Meredith v. Mola*, supra.

 Applying these criteria to the instant action, it is apparent that the Court has subject matter jurisdiction. In *Meredith* the Court ruled that a case arises under the Constitution when petitioner's claim will be sustained if the Constitution is given one construction and fails if given

another. Id. at page 4. In this action petitioner's claim for relief rests upon the construction given both Article II, § 3 (Qualifications) and Article II, § 4 (Manner of Election), Constitution of American Samoa. Petitioner claims that he was duly elected and qualified, whereas respondent was not so elected or qualified. The Court also ruled in *Meredith* that a claim to a legislative seat is a "case or controversy." Id. And finally, this cause is described in a jurisdictional statute. "The judicial power of American Samoa shall be vested in a High Court of American Samoa. . . ." 5 A.S.C. § 1 (1973). "The trial division of the High Court shall have original jurisdiction in all civil cases, controversies, and matters. . . ." 5 A.S.C. § 402(a) (1973). All of the criteria for subject matter jurisdiction are, therefore, present.

Having concluded that there is subject matter jurisdiction, the question of whether or not the Court will exercise that jurisdiction must now be addressed. In deciding whether the claim is "justiciable" the Court must determine: 1. whether the claim presented and the relief sought are of the type that admit of judicial resolution; 2. whether because of the structure of the Government of American Samoa the cause presents a "political question"—that is, a question which should not be decided by the High Court because of the separation of powers. See *Meredith v. Mola*, supra; *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491, 514 (1969).

The relief sought by the petitioner in his complaint is a declaratory judgment, pursuant to Ch. 3.18 et seq., R.C.A.S. (1961) which is 11 A.S.C. § 6671 et seq. in the 1973 edition, that he (Petitioner-Tuitasi) is the duly elected and qualified senator from Leasina County, whereas his opponent (Respondent-Faliu) was not so elected or qualified. Article II, § 22 of the Constitution of American Samoa expressly reserves to each House of the Legislature

the right to judge the elections and qualifications of its "members." Respondent-Faliu was sworn in as the senator from Leasina County on February 15, 1973, and is presently still serving in that capacity. For the Court to now render a declaration, as petitioner would have it do, that Petitioner-Tuitasi was elected and qualified, and that Respondent-Senator Faliu was neither duly elected nor qualified would be a clear usurpation of the Legislature's constitutional right. See *Meredith v. Mola*, supra. At this point, Respondent-Faliu is clearly a "member" of the Senate; and, consequently, it is the Senate that has the express constitutional right to adjudicate any dispute over his election or qualifications. *Meredith v. Mola*, is not inopposite to this conclusion. This is not simply a matter of constitutional interpretation, falling "within the traditional role accorded the courts to interpret the law," as was the case in *Meredith*. Rather, petitioner would have the Court go beyond interpretation and render an affirmative declaration that certain clear and unambiguous constitutional provisions have not been complied with. This he requests the Court to do in the face of an express constitutional delegation to the Senate to adjudicate such noncompliance, if any. In short, the claim presented and relief sought are of the type that admit of legislative adjudication rather than judicial resolution at this point.

An examination of the second criteria of "justiciability" renders a similar result. The issues raised by petitioner's complaint present the High Court with "political questions" and a "political question" is not justiciable because of the separation of powers within the Government of American Samoa. Here, as in *Meredith*, the primary consideration in determining whether the issue presented is a "political question" is whether Article II, § 22 of the Constitution of American Samoa is a "textually demonstrated constitutional commitment" to the Senate of the

"adjudicatory power" to determine the issue now before the Court. *Meredith v. Mola*, supra. In this case there is such a commitment.

 One of the issues raised by petitioner is whether he or respondent received the most votes at the election. It is well settled that the Senate is sole judge when "all that is at stake is a determination of which candidates attracted the greater number of lawful ballots." *Meredith v. Mola*, supra citing *Roudebush v. Hartke*, 31 L.Ed.2d 1, 15 (1972). Since Article II, § 22 is a "textually demonstrated constitutional commitment" to the Senate to judge the issue of whether petitioner or respondent received the most votes, the issue presented is a "political question" and not justiciable.

 The other issue raised in petitioner's complaint concerns the alleged failure of Senator Faliu to meet the qualifications set forth in Article II, § 3 of the Constitution of American Samoa. Obviously, Respondent-Faliu is a "member" of the Senate, having been sworn in on February 15, 1973, and presently serving. Article II, § 22, vests in the Senate the right to judge the qualifications of its members. As such, Article II, § 22, is a "textually demonstrated constitutional commitment" to the Senate to judge the qualifications expressly set forth in Article II, § 3. See *Meredith v. Mola*, supra; *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). Since the issue raised is respondent's alleged failure to meet the standing qualifications of Article II, § 3, and the power to adjudicate that point is vested in the Senate by Article II, § 22, the issue presents a "political question" and, hence, is not justiciable.

Copies of this Decision shall be served upon both parties or their counsel and affidavit of service filed by the person effecting such service.