Joseph J. TURNER, Plaintiff,

v.

DEPARTMENT OF ARMY, Defendant.

Civ. A. No. 77–223.

United States District Court,
District of Columbia,
Civil Division.

Feb. 22, 1978.

Jules B. Lloyd, Lloyd & Starr, and Fredric J. Gross, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Barbara Allen Babcock, Asst. Atty. Gen., Lynne K. Zusman and Thomas W. Hussey, Dept. of Justice, Washington, D. C., for defendant.

1. The complaint prayed specifically for a determination by the Court of "the correct and accurate nature and quality of plaintiff's conduct and efficiency for his performance of duties." The complaint also demanded damages.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff is a former Army Chaplain who was involuntarily separated from the military in 1976. He sues under the Privacy Act, 5 U.S.C. § 552a, et seq., asking the Court to determine the quality and efficiency of his military services for the period May 1 to November 1, 1971.[1] Plaintiff originally filed this complaint in the United States District Court for the District of Hawaii on July 12, 1976.

At the time plaintiff filed this action in Hawaii, a parallel action, filed by plaintiff in this District in 1973, was pending before Judge Corcoran. Turner v. Alexander, C.A. No. 73–0761. Noting the similarity between the two cases, the defendant in this case moved to transfer it from Hawaii to this District so that the two cases could be consolidated. Plaintiff initially opposed the motion to transfer and to consolidate, but later withdrew his opposition for reasons of personal convenience. The case was transferred to this District in February 1977. The plaintiff did not invoke Rule 15, Fed.R. Civ.P. to amend his complaint, and neither the parties nor the Court here invoked Rule 3–4, Local Rules of this District Court to consolidate the two cases.

Before the transferred case was ripe for decision, Judge Corcoran granted summary judgment for the defendant in the action before him.[2] Plaintiff filed an appeal from that judgment, which appeal is now pending in the Court of Appeals for this Circuit.[3]

Meanwhile, the present action has come before this Court on the parties' cross-motions for summary judgment. For the reasons stated below the Court will grant defendant's Motion for Summary Judgment.

The essential undisputed facts are these: Plaintiff was an Army Chaplain assigned duties in combat zones in Vietnam during

2. Turner v. Alexander, C.A. No. 73–0761 (June 6, 1977).

3. Id. (C.A. No. 77–1823).

the period of service in question. He received a negative Officer Efficiency Rating from his Commanding Officer for the period May 1 through November 1, 1971. Believing this rating by his Commanding Officer to be in retaliation for plaintiff's intercession on behalf of four enlisted men whom plaintiff believed to be suffering abuse, plaintiff sought redress pursuant to Article 138 of Uniform Code of Military Justice, 10 U.S.C. § 938 (UCMJ). Plaintiff's grievance was rejected up the line of command, to and including the Judge Advocate General of the Army, because it did "not lie within the scope of Article 138, U.C.M.J." Thereafter, in 1973, plaintiff filed the parallel action with Judge Corcoran alleging that Army officials had improperly processed his grievance.

Although the plaintiff framed his complaint in the 1973 action to challenge only the processing of his Article 138 grievance and not its substantive merits, Judge Corcoran made an interlocutory ruling that:

[t]he only instance of direct harm suffered by the plaintiff, which is apparent from the pleadings and which is cognizable under the provisions of Article 138, is the adverse [officer] efficiency rating. Read in this light, plaintiff's complaint may be construed as directed solely toward that issue . . . . *Turner v. Callaway*, 371 F.Supp. 188, 192 (1974).

Judge Corcoran noted that the Army Board for the Correction of Military Records (ABCMR) provided administrative recourse to correct such adverse ratings and, on the motion of the defendant, remanded plaintiff's case to the ABCMR.[4]

On August 6, 1974, following the remand, the plaintiff applied to the ABCMR for the removal of the adverse efficiency rating and for the substitution of a revised one. In response, the ABCMR recommended the removal of the adverse rating and the substitution of a "non-rated" entry in plaintiff's record for the period. The ABCMR declined to recommend replacement of the contested rating with a revised rating because it concluded that "there is no way at this time whereby an effective meaningful revised report can be prepared on the applicant for the period in question."[5]

On October 13, 1975, plaintiff again requested that the ABCMR recommend substitution of a new entry in place of the entry "non-rated" by, among other means, extrapolating a rating from his previous ones, or from the ratings of other chaplains. On February 25, 1976, the Board again declined plaintiff's request to recommend a revised rating. Instead it recommended that laudatory letters regarding plaintiff's service be placed in his file. The ABCMR elaborated on its continued refusal to substitute a revised rating, concluding that:

[t]o have a report with nothing but an average score would appear to raise serious questions as to why such a report would be in his file and prejudice his chances for promotion. It would not be fair to the applicant to use the average scores in his record up to the time the report was removed because his overall record is not that strong. Conversely it would not be fair to his contemporaries to use a higher average than he would ordinarily be expected to receive. The Office of the Chief of Chaplains has advised that they have no means available to average all of the Chaplains' [ratings] who were in Vietnam during that time frame.[6]

The ABCMR also noted that it is the policy of the Army "to declare a period as being non-rated upon successful appeal of [a rating] through administration channels."[7]

The Army adopted the recommendations of the ABCMR.

---

**4.** The ABCMR, established pursuant to 10 U.S.C. § 1552, is composed of civilians who process complaints regarding military records and make recommendations for the corrections of records containing errors or injustices to the Secretary of the Army.

**5.** Proceedings of ABCMR, In the Case of Joseph J. Turner, 5 (April 9, 1975) (Deft.Ex.B).

**6.** ABCMR Examiner's Memo, Joseph J. Turner, 5 (February 25, 1976) (Deft.Ex.D).

**7.** *Id.* at 6.

On June 6, 1976, Judge Corcoran reviewed the administrative record and granted defendant's Motion for Summary Judgment. He held that the ABCMR's recommendation and the Army decision were supported by the record and were neither arbitrary nor capricious. In denying the plaintiff's request for a revised Officer Efficiency Rating, Judge Corcoran found that:

the ABCMR reasonably concluded that difficulties inherent in preparing in 1975 a rating which would reflect in fairness and accuracy plaintiff's performance in Vietnam four years earlier outweighed the mitigated harm to Captain Turner after the inclusion of several letters of commendation among his service records. *Turner v. Alexander*, C.A. 73–0761, 5 (June 6, 1977).

In the interim between the final action of the ABCMR and Judge Corcoran's ruling, plaintiff wrote the Army a letter dated April 14, 1976. That letter requested that his records "be amended so as to accurately reflect the *quality* of [his] services" for the presently non-rated period.[8] This request

differed essentially from those previously submitted to the ABCMR only in its reference to the Privacy Act of 1974 as authority. The Army responded on April 30, 1976, that, as a result of the elimination of the adverse rating, there was no record to correct. The plaintiff was invited to identify a record, paper, or document in his record that was not accurate or complete.[9] Plaintiff did not respond, but, instead, filed the present suit in the District of Hawaii.

The complaint filed in Hawaii alleges that: (1) the Army's letter of April 30, 1976, violated the Privacy Act's requirement that the Army inform the plaintiff of the reason for its refusal to amend his record and of the Army's procedures to request and obtain a review of that refusal, 5 U.S.C. § 552a(d)(2)(B)(ii), and (2) in maintaining the nonrated entry, the Army knowingly failed and refused to maintain accurate and complete records, 5 U.S.C. §§ 552a(d)(2)(B)(i),—(e)(5).[10] For relief plaintiff prays for damages and for the substitution of a "fair and accurate" rating.[11]

8. Pltf. Ex. A 2. (emphasis added)

9. Pltf. Ex. B.

10. 5 U.S.C. § 552a provides in relevant part:
(a) Definitions—For purposes of this section—
* * * * * *
(4) the term 'record' means any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph;
* * * * * *
(d) Access to records—Each agency that maintains a system of records shall—
* * * * * *
(2) permit the individual to request amendment of a record pertaining to him and—
* * * * * *
(B) promptly, either—
(i) make any correction of any portion thereof which the individual believes is not accurate, relevant, timely, or complete; or
(ii) inform the individual of its refusal to amend the record in accordance with his re-

quest, the reason for the refusal, the procedures established by the agency for the individual to request a review of that refusal by the head of the agency or an officer designated by the head of agency, and the name and business address of that official.
* * * * * *
(e) Agency requirements—Each agency that maintains a system of records shall—
* * * * * *
(5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

11. Under the Privacy Act an individual who disagrees with an agency refusal to amend his record may request review. If this refusal persists, the individual is authorized to bring a civil action "and the district courts of the United States shall have jurisdiction in [these] matters . . . ." 5 U.S.C. § 552a(g)(1).
In such an action "the court may order the agency to amend the individual's record in accordance with his request, or in such other way as the court may direct. In such a case the court shall determine the matter de novo." 5 U.S.C. § 552a(g)(2)(A).
If the agency's failure to maintain an accurate record was "intentional or willful," the

It is apparent that this case and the case decided by Judge Corcoran involve the same facts and seek the same relief. The parties are the same; the court is the same. Judge Corcoran clearly had jurisdiction to consider and decide the alleged violations of the Privacy Act if they had been brought before him instead of having been made the subject of a separate suit. Plaintiff, however, made no motion to amend his complaint filed with Judge Corcoran and resisted the defendant's efforts to transfer the case in Hawaii to consolidate it with the one already pending in this District.[12]

Only when plaintiff's involuntary separation from the service became imminent, did he withdraw his opposition to the transfer.[13] In a memorandum to Judge Corcoran the plaintiff stated that relief he sought was "*solely with respect to the manner in which Article 138 complaints are processed.*"[14] Judge Corcoran found, nevertheless, that any relief sought other than the substitution of a revised rating was either moot or a request for an advisory opinion.[15] Judge Corcoran then ruled against the plaintiff as to substitution.[16]

From the foregoing it appears that, despite plaintiff's effort to prevent it, Judge Corcoran has already adjudicated the essential substantive merits of plaintiff's prayer for relief here. As a practical matter plaintiff has submitted the same claim to two different judges of the same court. The Federal Rules, however, afforded plaintiff wide latitude to plead in general terms, to amend pleadings freely, to supplement pleadings, and to conform pleadings to the proof. Fed.R.Civ.P. 7, 8, 15. Both the Federal Rules and the local rules of this court provide for the consolidation of actions involving a common question of fact. Fed.R. Civ.P. 42(a); Local Rule 3–4. Nothing barred the plaintiff from amending the complaint before Judge Corcoran to invoke whatever power a District Judge may have to review a military record *de novo* under the Privacy Act. Plaintiff had also claimed damages in the suit before Judge Corcoran. An amendment invoking the Privacy Act there would have also enabled plaintiff to obtain an adjudication from Judge Corcoran on the damage claim now before this Court.

For apparently futile tactical reasons, the plaintiff chose not to employ these various opportunities to bring the present claims (including the claim for damages) before Judge Corcoran and obtain *de novo* review by him. The price of plaintiff's strategy, however, should not be paid by the Court or the defendant. The principles of the efficient utilization of limited judicial resources and the protection of defendants from the vexation of repetitive litigation under the doctrines of *res judicata* and col-

court may award damages of not less than $1,000. 5 U.S.C. § 552a(g)(4).

12. In opposing the transfer motion, plaintiff filed the affidavit of his attorney in the case before Judge Corcoran. This affidavit informed the Court in Hawaii that the attorney advised plaintiff to file a separate action in Hawaii because:

1. The attorney had agreed to represent plaintiff without fee only in the action pending before Judge Corcoran.

2. The plaintiff was stationed in Hawaii at the time.

3. The pending action had already been "unduly long" and "unreasonably complex."

4. The attorney personally viewed the plaintiff's right to a particular rating to be a separate issue from his procedural rights under Article 138.

5. The standard and form of judicial review available under the Privacy Act was different.

6. The final resolution of the suit before Judge Corcoran was imminent.

13. He apparently continued his opposition to consolidation, nevertheless, and filed the aforementioned affidavit of his attorney in the parallel action with Judge Corcoran "to eliminate all possible confusion" as to the two suits. Plaintiff's Supplemental Memorandum of Points and Authorities in Support of the Motion for Summary Judgment. *Turner v. Alexander*, (C.A. No. 73–0761, filed Nov. 15, 1976).

14. *Id.* at 2 (emphasis in original).

15. *Id.* Memorandum and Opinion, 5 n.7 (filed June 6, 1977).

16. Now on appeal, plaintiff has continued to urge that the case before Judge Corcoran involved only procedural rights under Article 138. *See* Brief for Appellant, 7 n.5 (filed Nov. 2, 1977).

lateral estoppel apply forcefully in this case. As the Court of Appeals for this Circuit has held in another context: "If the doctrine of res judicata applies, both parties are concluded, not only as to things which were determined but as to all matters which might have been determined as well." *Tutt v. Dolby,* 148 U.S.App.D.C. 171, 459 F.2d 1195 (1972). It is appropriate in the circumstances presented by these two cases to bar the present claims "to discourage splitting causes of action or defenses, thus wasting valuable judicial resources and imposing needless burdens on the parties-defendant." [17] *Id.* 148 U.S.App.D.C. at 175 at 1199. Accordingly, an appropriate order will enter dismissing plaintiff's complaint as barred by Judge Corcoran's decision.

In the course of deciding that the plaintiff's claim is barred by Judge Corcoran's decision, the Court has considered whether a decision based on such technical grounds might be unjust, or give too much weight to court administration at the expense of the just claims of an individual plaintiff. The Court concludes that even if the plaintiff's complaint were not barred, it should be denied for failure to state a claim upon which relief should be granted.

■ The Court notes that this is a claim by an Army officer who volunteered for service. A person who volunteers for military service assumes obvious risks to his life, limb, and liberty. Plaintiff alleges no wrong of constitutional dimension. *Cf. Churchwell v. United States,* 414 F.Supp. 499 (N.D.S.D.), *aff'd,* 545 F.2d 59 (8th Cir. 1976). The ultimate complaint is about an Officer's Efficiency Rating. He has been afforded full and reasoned administrative review of his record by a civilian board specially created to resolve complaints about individual military records, specifically including efficiency ratings. That review has resulted in substantial relief. An unfavorable rating has been expunged, and replaced by a neutral entry; [18] a number of favorable documents have been placed in his file. The Board and the Army determined, with reasons, that, having expunged the negative rating, it would be extremely difficult, if not impossible, to prepare an effective, meaningful substitute. The Army chose, therefore, not to go through the exercise at this late date of seeking out original evidence and attempting to convene the personnel required to prepare a new rating to replace the allegedly erroneous one. Judge Corcoran has found this decision to be reasonable and his decision is under submission before a United States Court of Appeals.

What then can this Court do that the Army and Judge Corcoran have not already done to make plaintiff's record "accurate" and "complete" within the meaning of the Privacy Act? The answer lies in the fact that plaintiff does not complain about the accuracy and completeness of the information in the personnel record maintained by the Army. His complaint is about the absence from that record of any subjective judgment as to the "quality" of his service for the period May 1 through November 1, 1971.[19] His ultimate prayer is in essence that the Privacy Act requires this Court to constitute itself as a military personnel rat-

---

**17.** The guidelines of the Office of Management and Budget for administrative management of Privacy Act requests expressly recognizes this doctrine as it applies to the Privacy Act:

These provisions [for amending records under the Privacy Act] are not designed to permit collateral attack upon that which has already been the subject of a judicial or quasi-judicial action. 40 Fed.Reg. 28958 (July 9, 1975).

**18.** In support of its Motion for Summary Judgment, the defendant filed the affidavit of Colonel Zorn, Chief, Officer Division, Office of the Deputy Chief of Staff for Personnel, Department of Army (Zorn affidavit). Colonel Zorn is responsible to the Deputy Chief of Staff for the formulation of Army policy relating to personnel management. Plaintiff did not challenge or refute the testimony presented in the affidavit.

Colonel Zorn testified that non-rated periods of services are common entries in an officer's record and that the absence of an actual rating is not necessarily prejudicial to an officer's being considered for promotion. Promotion boards consider the complete contents of an officer's file which includes other ratings, letters of commendation or reprimand, and historical information. Zorn affidavit at 3.

**19.** Plaintiff also claims that the Army violated his right to be advised as to (1) the Army's reasons for refusing to amend his record and (2) the procedures for review of that refusal.

ing authority, gather the evidence necessary to reconstruct plaintiff's service for the six months in question, determine *de novo* "a fair and accurate" rating as to the "quality" of his service for the relevant period, and then instruct the Army to record the Court's Officer Efficiency Rating.

An Officer Efficiency Rating as to the quality of an officer's service is a highly subjective process which requires the opinions and judgments of military professionals.[20] If Congress had intended to require this Court to make such a decision *de novo*, it could have said so more plainly than the words used in the Privacy Act.[21] That Act defines the word "record" as "any item, collection or grouping of information about an individual that is maintained by an agency, including, but not limited to . . . his employment history." The key word in this definition is "information." Plaintiff's record maintained by the Army contains information that he is not rated, plus laudatory letters about him. In the circumstances here, that record is accurate and complete within the meaning of the Privacy Act; addition to that record of this Court's opinion about the quality of plaintiff's service would not improve either the accuracy or completeness of the record.

This might be a different case if the plaintiff were asking for correction of a factual or historical error, such as whether or not he was present at a particular place at a particular time. Or the Court might

be required in certain circumstances to expunge a rating which was contrary to objective facts. This might also be a different case, particularly with respect to damages, if plaintiff had shown that the Army intentionally or negligently altered or lost his records to his disadvantage. But the only records shown to be missing are those expunged at plaintiff's request and for his benefit.

In ultimate essence, the plaintiff is asking the Court to rate him *de novo.* This the Court cannot and should not do, at least in the circumstances here.[22]

An appropriate order will be entered granting defendant's Motion for Summary Judgment.

---

In view of the full dress review already afforded plaintiff by the ABCMR and Judge Corcoran's thorough consideration of that review, the Court finds these elements of plaintiff's claim to be without merit.

**20.** An Officer Efficiency Rating is principally the personal judgment and opinion of a superior officer of the subject's professional military attributes, manner of performance, and potential demonstrated during a specific period of time in a particular duty assignment. Zorn affidavit at 2.

**21.** The Army, itself, never changes the subjective content of a rating other than *deletions* accomplished, as in the present case, pursuant to administrative appeal. Zorn affidavit at 4.

**22.** Plaintiff has moved for default judgment because of the delay of approximately 18 months from the filing of the complaint to the filing of

the answer. Plaintiff consented to four months of the delay. An additional four months resulted from a stay on defendant's Motion to Transfer issued by the court in Hawaii. Additional delay resulted from administrative problems in the U. S. Attorney's office, either in this District or in Hawaii or both, in transferring the U. S. Attorney's case file. Some delay remains unaccounted for. But the Court notes the clear mandate of Rule 55(e), Fed.R.Civ.P., that "No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes his claim or right to relief . . . by evidence satisfactory to the court." For the reasons already stated, the plaintiff has not established his claim, thus his claim for default judgment will be denied.